198 So.2d 543 (1967)
Henry SOILEAU, Plaintiff-Appellee,
v.
TRAVELERS INSURANCE COMPANY, Defendant-Appellant.
No. 1970.
Court of Appeal of Louisiana, Third Circuit.
April 26, 1967.
Rehearing Denied May 25, 1967.
Writ Refused June 30, 1967.
Dubuisson & Dubuisson, by James G. Dubuisson, Opelousas, for defendant-appellant.
Paul C. Tate, Mamou, for plaintiff-appellee.
*544 Before FRUGÉ, SAVOY and CULPEPPER, JJ.
SAVOY, Judge.
This is a suit by a plaintiff surviving husband for benefits under the Louisiana Workmen's Compensation Act for the death of his wife. After a trial on the merits the lower court granted the plaintiff husband compensation at the rate of $10.00 per week for 400 weeks, and $600.00 for burial expenses. Defendant appealed to this Court.
The record shows that on February 15, 1965, Theresa Fontenot, wife of Henry Soileau, injured her knee while in the course and scope of her employment with the Dupre Clinic and Hospital in Ville Platte, Louisiana. Travelers Insurance Company was the insurer of the Clinic at the time of the accident. On the date of the accident the decedent was examined by Dr. C. J. Aswell who diagnosed her injury as a ligament tear with a little hematoma of the left knee. On February 17th she was referred to Dr. Bordelon, an orthopedist practicing in Opelousas, Louisiana. Dr. Aswell consulted with Dr. Bordelon about the treatment prescribed for Mrs. Soileau. It was stipulated by counsel for all parties to this suit that Mrs. Soileau did not work from February 15, 1965 to March 1, 1965. On March 1, 1965, she returned to her work at the Dupre Clinic. Dr. Aswell was under the impression that Mrs. Soileau twisted her ankle again because she complained of having trouble with her knee. Mr. Cecil Colligan, Administrator for the Dupre Hospital and Clinic testified that Mrs. Soileau had worked until May 1, 1965. On May 27, 1965, Dr. Aswell wrote defendant insurer a letter in which he stated that Mrs. Soileau had been totally disabled again since April 27, 1965, due to the first injury of February 15, 1965. He also stated that he had examined her on May 27, 1965, and that she would return to work on May 31, 1965, although she would not be released from his care. Dr. Aswell suggested that Mrs. Soileau (at her request) be paid compensation from April 27, 1965 to May 31, 1965.
Mrs. Soileau was paid compensation during the period from February 22, 1965, to March 1, 1965 (the first week's compensation was not paid because under the compensation act it was not owed since the original injury did not last for six weeks LSA-R.S. 23:1224).
On June 4, 1965, defendant mailed a check to Mrs. Soileau for the period April 27, 1965, to May 31, 1965. Mrs. Soileau committed suicide on June 7, 1965, and on that same date the compensation check was received.
In his reason for judgment, the trial judge found that Mrs. Soileau's suicidal death was not deliberate or wilful within the meaning of LSA-R.S. 23:1081, and allowed plaintiff to recover compensation as a partial dependent at the minimum rate allowed under the act for 400 weeks. He found as a matter of fact that the suicide was not premeditated, but was the act of a deranged person.
Counsel for both parties state that the subject matter in litigation has never been decided by an appellate court in this State.
Counsel for appellant contends that the trial court was in error in:
(1) determining that the decedent's suicide was not wilful; and
(2) that if counsel is in error in his first contention, that plaintiff is not a dependent and is not entitled to workmen's compensation benefits under said compensation act.
LSA-R.S. 23:1081 provides that "No compensation shall be allowed for an injury caused: (1) by the injured employee's wilful intention to injure himself or to injure another * * *." That section of the revised statute also provides that in determining whether or not an employer *545 shall be relieved of paying compensation because of the injured employee's wilful intention to injure himself, "the burden of proof shall be upon the employer."
In reviewing the decisions of appellate courts of other states, it appears that some states have adopted what has come to be called the "majority rule" and others have adopted the rule known as the "minority rule." The majority rule, briefly stated, is that in order for the death to be compensable the decedent, at the time of his suicidal act, must be motivated by an uncontrollable impulse or in a delirium of frenzy, without conscious volition to produce death. This rule is based upon the assumption that where there is a conscious volition in committing the suicidal act, then the death does not result from the accident but it results from an independent intervening cause, and is a wilfully self-inflicted act. See In re Sponatski, (1915) 220 Mass. 526, 108 N.E. 466, L.R.A.1916A, 333; Anderson v. Armour & Co., (1960), 257 Minn. 281, 101 N.W.2d 435; Schofield v. White, (1959), 250 Iowa 571, 95 N.W.2d 40; Mershon v. Missouri Public Service Corp., (1949), 359 Mo. 257, 221 S.W.2d 165; Barber v. Industrial Commission, (1942), 241 Wis. 462, 6 N.W.2d 199, 143 A.L.R. 1222; 45 Iowa Law Review 669. The minority rule allows compensation if the injury causes, precipitates or aggravates the insanity or mental derangement, which in turn causes a suicide. Under this rule, "work connection" is the primary criteria for granting relief. Burnight v. Industrial Accident Commission, (1960), 181 Cal.App.2d 816, 5 Cal. Rptr. 786, 787; Harper v. Industrial Commission, (1962), 24 Ill.2d 103, 180 N.E.2d 480; Prentiss Truck and Tractor Company v. Spencer, (1956), 228 Miss. 66, 87 So.2d 272, 88 So.2d 99; Graver Tank & Mfg. Co. v. Industrial Commission, (1965), 97 Ariz. 256, 399 P.2d 664; Whitehead v. Keene Roofing Co., (Florida, 1949), 43 So.2d 464.
In the Estate of Vernum v. State University of N. Y. Coll., (1957), 4 A.D.2d 722, 163 N.Y.S.2d 727, where this issue was presented, the court said:
"His widow seeks an award of death benefits on the theory that the decedent committed suicide because of his mental condition resulting from the accident. For an accidental injury to be held to be the cause of a suicidal act, it must be proved that the act was the product of some form of mental disease, which resulted from the injury. Otherwise, the suicide is attributable to the decedent's own volitional act, which constitutes an independent intervening cause (1 Larson on Workmen's Compensation, § 36.10; Palmer v. Redman, 281 App.Div. 723, 117 N.Y.S.2d 708; Seal v. Effron Fuel Oil Company, 284 App.Div. 795, 135 N.Y.S. 2d 231).
"The Board found that the suicidal death was not causally related to the accidental injury decedent sustained. Implicit in this finding is a finding that the accident did not cause insanity or mental disease which, in turn, caused the suicide. There was no medical proof in this case except that of the decedent's physician, a general practitioner. He did not testify that the decedent had suffered from mental disease. He testified only that, as a result of the accident, decedent had become discouraged, depressed and despondent. This testimony would have been insufficient to sustain an award if one had been made (Aponte v. Santiago & Garcia, 279 App.Div. 269, 109 N.Y.S.2d 761; cf. Maricle v. Glazier, 283 App.Div. 402, 128 N.Y.S.2d 148, affirmed 307 N.Y. 738, 121 N.E.2d 549) * * *."
Also, in Franzoni v. Loew's Theatre & Realty Corp., (1964), 22 A.D.2d 741, 253 N.Y.S.2d 505, the court said:
"* * * In Matter of Delinousha v. National Biscuit Co., 248 N.Y. 93, 96, 161 N.E. 431, 432, the Court of Appeals stated the applicable test as follows:
"`Death benefits are allowed if the injury results naturally and unavoidably in *546 disease, and the disease causes death. This is so if the injury causes insanity from gangrenous poisoning or otherwise, and the insanity directly causes suicide; in other words, if the suicide is not the result of discouragement, of melancholy, or other sane conditions, but of brain derangement.'
"Mere depression alone is thus not sufficient (Matter of Vernum v. State University of New York College of Forestry, 4 A.D.2d 722, 163 N.Y.S.2d 727). There must be evidence of brain derangement or psychosis (see Matter of McIntosh v. E. F. Hauserman Co., 12 A.D.2d 406, 211 N.Y.S.2d 482, affd. 10 N.Y.2d 892, 223 N.Y.S.2d 513, 179 N.E.2d 514; Matter of Maricle v. Glazier, 283 App.Div. 402, 128 N.Y.S.2d 148, affd. 307 N.Y. 738, 121 N.E.2d 549). Of course, whether in a given case brain derangement or psychosis is established and whether if established it can be traced to a prior accident or, as here, accidents are questions of fact and thus within the province of the board of its determination is supported by substantial evidence (Matter of McIntosh v. E. F. Hauserman Co., supra). * * *"
We believe the rule applied by the New York courts is consistent with the intent of the Legislature in enacting the Louisiana Workmen's Compensation Act, and particularly that it is consistent with the provisions of LSA-R.S. 23:1081.
We hold, therefore, that where death is caused by suicide, death benefits may not be recovered under the Louisiana Workmen's Compensation Act unless it is established that the suicidal act was the product of some form of insanity, mental disease, mental derangement or psychosis, which resulted from the injury. Otherwise, a suicide is attributable to the decedent's own volitional act which constitutes an "independent intervening cause." It is not sufficient for recovery to show that the suicide resulted merely from the fact that the decedent had become discouraged, depressed, despondent or melancholy as the result of the accident or injury.
The medical testimony in this case consists of the testimony of Dr. Charles Aswell, the decedent's treating physician, and of Dr. John A. Fisher, a psychiatrist who never treated decedent and who had not known her during her lifetime.
Dr. Aswell testified he last saw decedent on May 27, 1965. At that time he discharged her to return to work. The doctor stated that on the above date he did not notice anything about decedent which would lead him to believe she would commit suicide. He stated she was a very stable person.
Dr. John A. Fisher testified on behalf of plaintiff. His depositions were taken in Lafayette, Louisiana, and were introduced in evidence at the trial of the case. He was asked hypothetical questions. On cross-examination counsel asked Dr. Fisher the following questions which were answered, namely:
"Q. But the point that I am getting at is: Don't you have a difference between a mind that is so disordered that it doesn't really appreciate the consequences of the act as against a mind that is more ordered and does fully appreciate the consequence of the act?
"A. Yes, I think that you are making the distinction there between people who are psychotic and people whom we are referred to as neurotic. The psychotic individual can, on occasion, get so upset that he will take his life. It certainly is still a wilful act but he may be so disturbed that he may not entirely appreciate the consequences of the act at the time.
"Q. Right. Now, from the facts that you glean there, from what you know, what has been presented to you, do you *547 think that this poor lady was of the psychotic type or the neurotic type?
"A. I would say that she was of the neurotic type. Her behavior shortly before her death was apparently perfectly normal judging from her husband's report. Ordinarily in a psychosis one would have expected a much longer term of obvious overt severe mental illness."
Plaintiff testified that on the morning of the suicide his wife appeared normal. The record reveals that prior to her death decedent had cleaned the house and everything appeared tidy and in order.
After reviewing all of the evidence, we conclude that the suicide by decedent was not caused by insanity, mental disease, mental derangement or psychosis. Construing the evidence most favorable to plaintiff, the best that can be said is that the decedent became despondent, and even though her despondency may have resulted from the accident, that is not sufficient to entitle plaintiff to recover death benefits under the Louisiana Workmen's Compensation Act. We find, therefore, that the death in this case was caused by the decedent's wilful intention to injure herself, and that plaintiff thus is barred from recovery under the provisions of the Workmen's Compensation Act.
Having determined that plaintiff cannot recover for the death of his wife, it is not necessary for us to determine whether he was a dependent under the provisions of the compensation act.
For the reasons assigned the judgment of the district court is reversed, set aside and annulled, and judgment is hereby rendered in favor of defendant, Travelers Insurance Company, and against plaintiff, Henry Soileau, rejecting his demands and dismissing his suit at his costs.
Reversed.

On Application for Rehearing.
En Banc. Rehearing denied.