336 So.2d 275 (1976)
Judy Hanson ROME
v.
LIFE AND CASUALTY INSURANCE COMPANY OF TENNESSEE.
No. 10813.
Court of Appeal of Louisiana, First Circuit.
June 30, 1976.
Rehearing Denied August 27, 1976.
Writ Refused November 16, 1976.
*276 George R. Covert, Baton Rouge, for appellant.
Maurice J. Wilson, Breazeale, Sachse & Wilson, Baton Rouge, for appellee; Donald K. Switzer and Barrett Sutton, Nashville, Tenn., of counsel.
Before SARTAIN, CHIASSON and EDWARDS, JJ.
CHIASSON, Judge.
Plaintiff-appellant, Judy Hanson, Rome, brought suit, as beneficiary, against defendant-appellee, Life and Casualty Insurance Company of Tennessee, under a policy of insurance which provided coverage in the amount of $27,860.00 in the event of the accidental death of Lovincy A. Rome, Jr., appellant's husband. The policy, issued on April 25, 1972, contained a provision which limited appellee's liability, in the case of suicide within two years of date of issuance, to the amount of the premiums paid.
Mr. Rome, the insured, died of a gunshot wound on October 8, 1973. Appellee, in the belief that the insured's death was suicide, paid the appellant $257.60, the amount of the premiums paid. Appellant then brought this suit to recover the amount due for accidental death under the terms of the policy.
After a trial on the merits the Trial Court held the insured's death to be suicide.
It is well settled that when suicide is offered as a defense to a suit upon an insurance policy the burden of proof rests heavily upon the insurer to establish the occurrence of the suicide to the exclusion of every other reasonable hypothesis. Webster v. New York Life Ins. Co., 160 La. 854, 107 So. 599 (1926); Newdigate v. Acacia Mut. Life Ass'n, 180 La. 979, 158 So. 358 (1934); Brooks v. Louisiana and Southern Life Ins. Co., La.App., 246 So.2d 270 (1st Cir., 1971).
Where it is evident from the testimony that the insured killed himself, whether accidentally or intentionally, the case presents two questions. First, do the physical facts surrounding the death of the insured exclude with reasonable certainty any possibility of accident? Second, does the evidence show that the insured had a motive for taking his own life sufficient to overcome the presumption against suicide and make it reasonably certain that the death was not the result of an accident, but of the deliberate intention to take one's own life? Webster v. New York Life Ins. Co., supra.
The events which immediately preceded the death of the insured were that Mr. Rome, who appeared extremely intoxicated, entered the appellant's home about 5:30 A. M., went immediately to the bedroom and took a pistol appellant kept under her pillow. He then left the house, entered his car and drove off. As he was leaving the deceased shouted, "take care of the baby". Mr. Rome drove about 210 feet, almost to an intersection, and stopped adjacent to a wooded area. Two shots were heard.
Shortly thereafter, the appellant asked a neighbor, who was on his way to work, to see what had happened to her husband. The neighbor went to the car and found the deceased slumped to the right in the driver's seat. The neighbor spotted the gun on the deceased's left hip. The window next to the deceased was open, so the *277 neighbor removed the gun, brought it to the appellant and then went on to work.
When the police arrived at the scene, they found the car with the engine running and the lights on. The transmission was in first gear and the deceased's foot was depressing the clutch. The glove compartment was open and there was a cigarette in the deceased's left hand. The deceased had been shot once in the temple. One of the officers observed what he took to be powder burns around the wound. The coroner testified that he did not note whether there were or were not powder burns.
The gun contained two spent cartridges, but there was no sign of a second bullet in the car. One of the officers testified that in his opinion the pistol had a "hard trigger."
The above physical facts do not preclude with reasonable certainty any possibility of an accident. The physical facts establish that the deceased shot himself in the temple at fairly close range with a pistol with a "hard trigger." These facts do not, however, establish that the deceased shot himself intentionally. The possibility that Mr. Rome's death was the result of an accident is created by the fact that he was found in a car with the engine running and the transmission in first gear. The only thing preventing the car from moving was that the deceased's foot was depressing the clutch. In addition, there was a cigarette in the deceased's left hand and the glove compartment which was located to his right was open. While these facts do not establish that Mr. Rome shot himself accidentally, they do create the possibility, as counsel for plaintiff suggest, that the deceased shot himself while trying to put the pistol in the glove compartment. Where alcohol, automobiles and firearms are mixed, there exist the very real possibility of an accident.
The second factor to be considered in determining whether Mr. Rome's death was suicide is the existence or nonexistence of a motive. The only fact offered to explain why Mr. Rome should want to kill himself was that the appellant had filed a suit for separation about three weeks before the incident. The appellant and the deceased had been separated, in fact, for about three months at the time of the incident. Testimony at the trial indicated that the deceased wanted to save his marriage. The testimony also indicated that the relationship between the deceased and the appellant had improved after their separation.
The deceased and the appellant had one child, a daughter. The deceased was very fond of his daughter and had spent the previous day with her at his sister's home. During the separation the deceased had seen the child whenever he wished.
The sister of the deceased testified that the deceased had been in good spirits the day before his death and had planned to go fishing on the morning he died.
Mr. Rome was in good health and in good financial shape.
The above facts do not establish a motive sufficient to overcome the presumption against suicide.
While the Trial Court recognized that the insurer must establish suicide "to the exclusion of every other reasonable hypothesis," the Trial Court erred when, in applying this standard, it failed to give weight to the requirement that there be a motive sufficient to establish the deceased's intent to kill himself.
In Newdigate v. Acacia Mut. Life Ass'n, 180 La. 979, 158 So. 358 (1934), the Supreme Court said:
"While the law places upon the insurance company the burden of proving that the deceased committed suicide `to the exclusion of every other reasonable hypothesis' of death by any other means, it is not required to offer proof sufficient to eliminate every speculative, fantastic, *278 conjectural, frivolous, and imaginary hypothesis of death in any other way."
"It is our opinion that the evidence in this case shows clearly and beyond any rational doubt that the deceased intentionally destroyed himself."
The Court found intent in Newdigate because:
"In the instant case there was serious and strong motive for the deceased taking his life. His health was seriously impaired. He was discouraged and despaired. He had suffered a nervous breakdown. He had serious disagreement with his employer. He was threatened with loss of employment. He was burdened with financial worries. He was agitated and upset from being separated from his children, and brooded over the death of his first wife. He unbosomed himself to the several doctors who had waited upon him and to the captain, the chief officer, and purser of the steamer, and his wife, telling them of his overwhelming desire to destroy himself. He had previously actually attempted suicide."
"The room in which he was last seen was left in its normal condition, showing no evidence of violence. There was nothing about the railing of the ship to show that any one had heavily fallen against these protections, and the evidence is overwhelming that no one on the promenade or main deck could have fallen into the sea unless they deliberately and intentionally wanted to do so."
There is no such strong motive in the present case. If the deceased had no strong motive for taking his own life, the presumption is that he did so accidentally. Webster v. New York Life Ins. Co., supra.
Cases in which the Court has found fact situations insufficient to overcome the presumption against suicide include Webster v. New York Life Ins. Co., supra; Leman v. Manhattan Life Ins. Co., 46 La.Ann. 1189, 15 So. 388; Faulk v. Mutual Life Ins. Co., 160 La. 529, 107 So. 395; Oubre v. Mutual Life Ins. Co. of New York, La. App., 21 So.2d 191; Young v. First National Life Insurance Company, La.App., 159 So.2d 395.
For the reasons assigned, the judgment appealed from is reversed and it is ordered that there be judgment in favor of the appellant, Judy Hanson Rome, and against the appellee, Life and Casualty Insurance Company of Tennessee, in the amount of $27,402.40, the amount of the policy less the amount previously paid, plus legal interest from date of demand. Cost to be paid by appellee.
REVERSED AND RENDERED.