COLE, Judge.
This is a suit for workers’ compensation death benefits filed by the widow of Alois J. Mayer, Jr., who was killed in a car wreck while in the course and scope of his employment with the Louisiana Department of Agriculture. The ultimate issue is whether or not Mayer’s death was the result of his willful intention to injure himself so as to preclude recovery under the compensation law.
Mayer was killed immediately when his automobile struck the rear end of a flat-bed truck which was parked on the westbound shoulder of 1-10 in St. John the Baptist Parish. The collision occurred on April 20, 1976 at around 8:30 A.M. At the time, Mayer was driving from New Orleans to Baton Rouge for a meeting with his supervisors. It was stipulated he was in the course and scope of his employment with the Department of Agriculture when he died. The defendants, the State of Louisiana and its workers’ compensation insurer, defended the suit contending Mayer had intentionally injured himself. After trial on the merits, the trial court dismissed plaintiff’s suit pursuant to a finding that Mayer intentionally took his own life. From this adverse judgment, plaintiff has appealed.
The record shows Mr. Mayer was traveling westbound toward Baton Rouge at about 8:00 A.M. on a clear day. The autopsy performed after his death indicated his blood was free of alcohol and barbiturates. Two eyewitnesses testified they saw Mayer stop his car in the middle of the interstate highway by the side of the parked truck. Mayer then put his car in reverse and backed down the shoulder of the highway several hundred feet. The witnesses then saw him stop, put his ear in forward gear, accelerate quickly, and drive straight into the truck at a high rate of speed. These witnesses testified Mayer’s brake lights never came on, nor did he ever attempt to return to the highway, though there was no other car in the right driving lane to prevent his re-entry onto the highway. Mayer continued to accelerate until the point of collision and drove through several reflectors which were placed behind the disabled truck. These witnesses remained at the scene of the collision and gave statements to the State Police trooper who later arrived at the scene.
Another witness presented a totally different account of the accident. Plaintiff called Mr. John Wells on rebuttal. Mr. Wells is a truck driver who contends he was riding by Mayer when the wreck occurred. According to Wells, Mayer had just passed his truck when he began to drift off to the right side of the road. Mayer’s car left the road and hit the railings on the interstate, which is a long bridge where the collision occurred. Mayer’s car hit the bridge about 200 feet from the parked truck, and was thrown directly in line with the truck. Wells testified Mayer never hit his brakes, but he never put his car in reverse. Wells said he believed Mayer must have had a heart attack or had fallen asleep. Wells testified he stopped after the wreck and used his fire extinguisher on Mayer’s engine. However, he left before the state trooper arrived and did not make a statement. Mr. Wells also testified his truck was the only other automobile which was near Mayer at the point of the collision, though the other two witnesses claimed to have been within a few car lengths from the point of impact, and had expressed fear of being hit by flying debris.
One of plaintiff’s assignments of error charges the trial court erred when it found the testimony of Mr. Wells lacked credibility. We disagree with this contention.
The reviewing court must give great weight to the factual conclusions arrived at by the trier of fact. As has been said repeatedly, the trial court is better able to evaluate live witnesses, as compared with the appellate court’s access only to a cold record. Also, the proper allocation of trial and appellate functions between the respective courts requires us to defer to the trial court’s findings of fact unless we are able to assess those findings as “clearly wrong.” Arceneaux v. Domingue, 365 *640 So.2d 1330 (La.1978). Since the trial court’s finding that the collision was intentional is supported by two other eyewitnesses, we cannot say the finding is clearly wrong. This is particularly true in this instance because the trial court made an express determination of credibility. The trial court stated:
“The court if often faced with determining credibility of witnesses. I know there are instances where people see things happening in which they get a different perspective as to the events that they see, and I think it’s quite obvious when you’re in court listening to witnesses testify relative to events that they’ve seen how, perhaps, it’s easy that people can see somehwat different things. I don’t see how witnesses in this case could have been so opposite. Which means, obviously, that this court has to determine the credibility of the witnesses. Which witnesses does the court believe? In determining credibility of witnesses you do not count noses. The quality of the witness is what we’re interested in, not the quantity. So the court never, never counts noses, but it listens to the witness. It observes the demeanor, looks for motives, contradictory evidence that’s given, then it arrives at a decision as to who it believes. There’s no question in my mind but that the testimony of John Wells is absolutely false. It’s not the facts of what occurred on April 20th, 1976 relative to events leading up to the death of Mr. Mayer.” (Emphasis added.)
The above narrative, perhaps better than anything a reviewing court might formulate, illustrates the function of the trial court and validates our deference to the trial court’s findings of fact. And, the fact this is a workers’ compensation case does not alter the approach. The determination of an employee’s conduct is a factual one and it can be reversed by an appellate court only upon a finding of manifest error, i.e., that the trial court was clearly wrong. Crump v. Hartford Acc. & Indemn. Co., 367 So.2d 300 (La.1979); Bennett v. Industrial Welding and Fabricating, 411 So.2d 574 (La.App. 1st Cir.1982). As regards this employee’s conduct the trial"court stated:
“It is a finding of fact that ... Mr. Mayer did stop by the truck, he backed his vehicle up, as a witness testified, several hundred yards, he stopped his vehicle, and he accelerated at a high rate of speed and rear ended the flatbed truck.”
These, then, are the basic facts, solidly ingrained for the application of law. From these facts the trial court concluded:
“The court finds from the evidence that it was an intentional act to injure himself....”
Aside from the great weight we, as a matter of law, must give this factual conclusion, it is clear the opposing evidence before the trial judge justified fully his belief that the testimony of John Wells was “absolutely false.”
Plaintiff’s next assignment of error concerns the burden of proof required of defendants in establishing the statutory defense provided by La.R.S. 23:1081. La.R.S. 23:1081 provides in pertinent part:
“No compensation shall be allowed for an injury caused (1) by the injured employee’s wilful intention to injure himself. ...
“In determining whether or not an employer shall be exempt from and relieved of paying compensation because of injury sustained by an employee for the causes and reasons set forth in this Section, the burden of proof shall be upon the employer.”
This statute provides a special defense which must be clearly established by the employer, who bears the burden of proof. Velotta v. Liberty Mutual Insurance Company, 241 La. 814, 132 So.2d 51 (1961); Armstrong v. Jefferson Disposal Company, 258 So.2d 213 (La.App. 4th Cir.1972), writ refused, 261 La. 532, 260 So.2d 318 (1972).
Plaintiff contends the trial court erred when it failed to place upon the defendants the burden of excluding every reasonable hypothesis other than suicide. In support *641 of this argument, plaintiff cites the case of Rome v. Life & Casualty Insurance Co. of Tenn., 336 So.2d 275 (La.App. 1st Cir.1976), writ denied, 338 So.2d 1155 (La.1976). In Rome, the court held that “when suicide is offered as a defense to a suit upon an insurance policy the burden of proof rests heavily upon the insurer to establish the occurrence of the suicide to the exclusion of every other reasonable hypothesis.” 336 So.2d at 276.
We do not believe the burden of proof required in Rome applies in this case. Rome dealt with “suicide” as a contractual defense supplied by the insurance policy at issue in that case. This case involves a statutory defense which only requires proof of the employee’s “willful intention to injure himself.” In the absence of legislative language imposing the higher burden of proof required in Rome, we conclude the defense supplied by La.R.S. 23:1081 needs only to be established by the normal burden of proof in civil cases, that is, by a preponderance of the evidence. We think this applies, even under factual situations such as the present, where the employee’s willful intention to injure himself would almost certainly result in death. And, even if we were to assume, arguendo, the burden of proof in Rome was required, we believe the physical facts surrounding the death are such as to exclude every other reasonable hypothesis but that Mayer intended to take his own life.
In concluding the conduct of the decedent constituted an intentional act to injure himself, the trial court relied upon the case of Soileau v. Travelers Insurance Company, 198 So.2d 543 (La.App. 3d Cir.1967), writ refused, 250 La. 978, 200 So.2d 665. In Soileau, it was held where death is caused by suicide, workers’ compensation benefits may not be recovered unless it is established the act was the product of some form of insanity, mental disease, mental derangement or psychosis, which resulted from injury. Otherwise, the court held, a suicide is attributable to the decedent’s own volitional act which constitutes an independent intervening cause. The court added it is not sufficient for recovery to show the suicide resulted merely from the fact the decedent had become discouraged, depressed, despondent or melancholy as the result of an accident or injury. (Here, there was no prior accident or injury.)
We think the court’s reliance upon Soi-leau is well placed. The facts of this case are analogous to those of Soileau as regards possible motivations for willful intention to injure one’s own self. In Soileau, plaintiff asserted the death was employment-related, alleging decedent committed suicide because of despondency over her work-related injury. There was little indication she was contemplating such an act. Here, Mr. Mayer was concerned over what he perceived to be employment problems, including possible termination and whether or not he would receive retirement benefits. There was no indication he was contemplating suicide. Although Soileau is the only prior Louisiana case dealing with the problem of intent to injure one’s own self, it is a well reasoned opinion based upon a review of prevailing authorities from numerous jurisdictions.
The trial court did not articulate the burden of proof it imposed in this case. Its conclusion, however, that the decedent’s conduct constituted an intentional act to injure himself is a sound one. This is true under either the preponderance of the evidence rule or under the exclusion of every other reasonable hypothesis rule. And, as we view the problem, it is really immaterial whether the incident was, in fact, a suicide. It suffices the statutory defense was established.
Plaintiff’s final assignment of error specifies that the trial court erred in excluding the rebuttal testimony of Dr. Lyle LeCorgne, a psychologist, concerning the deceased’s propensity for suicide. The trial court excluded this testimony as outside the scope of rebuttal evidence, since the defendants in their case-in-chief had not tried to establish the decedent had a motive for suicide. While the matter of admission of rebuttal evidence is largely within the *642 discretion of the trial court, Baltzar v. Missouri Pac. R.R., 406 So.2d 324 (La.App. 3d Cir.1981), the trial court erred in refusing to allow this testimony. It is true defendants did not attempt to establish a motive for suicide but the thrust of the defense, developed mainly through fact witnesses, was that the decedent had intentionally taken his own life. Testimony by a psychologist to the effect the decedent was not the kind of person who was prone to commit suicide would therefore seem to be proper on rebuttal. However, we have examined Dr. LeCorgne’s testimony which is before this Court on proffer, and we do not find it to be persuasive. His opinion the decedent was not predisposed towards suicide was not based upon personal knowledge of the decedent or upon an examination of the decedent. He obtained his information from depositions, and also from interviews of decedent’s wife and a former neighbor. This testimony is not very convincing given the facts surrounding the death.
For the above reasons, the judgment appealed from is affirmed at plaintiffs cost.
AFFIRMED.