KLEES, Judge.
This appeal arises out of a claim for worker’s compensation death benefits. Plaintiffs, the widow and son of Greg Per-niciaro, filed suit for death benefits alleging that Greg Perniciaro’s suicide was a result of a mental illness produced by stress in the workplace. After a trial on the merits, the trial court found for the defendant, Martin Marietta, and denied the plaintiffs’ claim. It is from this judgment that the plaintiffs perfect their appeal.
*776 Greg Perniciaro worked for Martin Marietta from 1979 until his death on October 15, 1988. As “chief” of Funding and Reporting under the Administrator of Estimating, Greg Perniciaro supervised the preparation of various financial forms. In addition to these duties, Perniciaro occasionally participated in special projects which required preparing proposals for bids on contracts available to Martin Marietta. In order to man these temporary projects, employees are loaned from their usual departments to the special project team. While on the project, these employees retain their usual positions and responsibilities in addition to the responsibilities of the project. Martin Marietta calls this system of manning projects the “matrix system.” The system is understood by supervisors and employees, who ensure that all of the “loaned” employees’ usual tasks are completed while he is spending increased time working on special projects.
During the four months prior to his death, Greg Perniciaro was working on a special project, which involved preparing a bid for the Advanced Solid Rocket Motor (ASRM) contract. According to company policy, Greg Perniciaro retained his position as “chief” of Funding and Reporting while working on this project. Consequently, Perniciaro served under two supervisors, Michael Ray Taylor, the head of the Funding and Reporting department, and Elliot Labat, the head of the ASRM project. After months of working on the project, all of the substantive work on the proposal was essentially completed; only proofreading and photocopying remained.
On October 15, 1988, Greg Perniciaro was killed as a result of a self-inflicted gunshot wound to the head. At the scene was a note addressed to Jacquelyn Pernici-aro expressing Greg Perniciaro’s feelings of failure and fear that he would lose his job. Plaintiffs alleged that the stress of dealing with dual responsibilities and separate supervisors, and working excessive overtime, caused Greg Perniciaro to develop a mental illness which eventually caused him to take his life. In the reasons for judgment, the trial court rejected this assertion and found that there was no evidence of “mental illness” as required by law; and that pursuant to La.R.S. 23:1081, Greg Perniciaro’s suicidal acts were intentional and willful so as to preclude recovery for death benefits under worker’s compensation.
The leading case addressing whether worker’s compensation death benefits may be recovered in the case of suicide is Soileau v. Travelers Ins. Co., 198 So.2d 543 (La.App. 3rd 1967, writ denied, 250 La. 978, 200 So.2d 665 (1967). The Soileau Court held:
[Wjhere death is caused by suicide, death benefits may not be recovered under the Louisiana Workmen’s Compensation Act unless it is established that the suicidal act was the product of some form of insanity, mental disease, mental derangement or psychosis, which resulted from the injury. Otherwise, a suicide is attributable to the decedent’s own volitional act which constitutes an “independent intervening cause.” It is not sufficient for recovery to show that the suicide resulted merely from the fact that the decedent had become discouraged, depressed, despondent or melancholy as the result of the accident or injury.
Id. at 546.
Thus, in order to satisfy the Soileau standard, the decedent must have suffered a work-related accident or injury that caused him to become so mentally impaired that he did not have the capacity to form a “conscious volition” to end his life. Recently, the Third Circuit pointed out that an appropriate analysis under Soileau would be to consider the evidence on the decedent’s free will or ability to control his actions when analyzing the facts under modern medical definitions of “illness” or “disease.” Broussard v. Hollier Floor Covering, Inc., 602 So.2d 1023 (La.App. 3rd Cir.1992).
In the instant case, the trial court founds, as a matter of fact, based on the relevant lay and medical testimony presented at trial, that Greg Perniciaro’s suicide was not the result of mental disease or psychosis caused by the stress of working *777 on the ARSM project. A factual determination of this nature will not be disturbed on appeal unless it is clearly wrong, in light of all the evidence. Harris v. State Through Huey P. Long Memorial Hospital, 378 So.2d 383 (La.1979); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). After examining the evidence in the record, we conclude that the trial court was not clearly wrong in making these factual determinations.
In order to avoid the Soileau disqualification, plaintiffs must first establish that Greg Perniciaro suffered a work-related injury which caused the development of a mental illness. This type of claim, one based on a mental injury caused by mental stress, requires a direct link between the alleged mental injury and some employment-related event separate and apart from the onset of the breakdown or other mental symptoms. Sparks v. Tulane Medical Center Hospital & Clinic, 546 So.2d 138 (La.1989). In Sparks, the plaintiff filed a worker’s compensation claim for mental injuries as a result of threats and harassment by co-workers. Immediately after the harassment, the plaintiff began suffering from severe headaches which caused her to seek medical help. A treating psychiatrist diagnosed the plaintiffs condition as an “adjustment disorder,” resulting from the harassment at work. In finding for the plaintiff, the Sparks Court stated that “... mental injury must be precipitated by an accident, i.e., an unexpected and unforeseen event that occurs suddenly or violently.” In footnote 7 to this quotation, the court emphasized,
While the sudden onset of physical injury may qualify as the compensable “accident” in some cases, (citations omitted), an employee’s subjective assertion that he had a sudden onset of symptoms of mental injury, such as depression or anxiety, is not alone sufficient to show that an accident occurred. The employee must be able to point to a discernible employment-related event which caused the mental injury, an event separate and apart from the onset of the symptoms of that mental injury.
Id. at 147.
The Sparks Court found that the “event” which caused the mental injury was the communication of threats to the plaintiff. In the instant case, plaintiffs contend that the ASRM project was the “event” that triggered the decedent’s mental injury. However, the ASRM project cannot be considered “an unexpected and unforeseen event.” These projects are general conditions of employment at Martin Marietta and Greg Perniciaro had worked on similar projects in the past. In Sparks, the Supreme Court emphasized that “a mere showing that a mental injury was related to general conditions of employment, or to incidents occurring over an extended period of time, is not enough to entitle the claimant to compensation.” (Emphasis provided). Sparks, 546 So.2d at 147. Therefore, the plaintiffs failed to prove the existence of a mental injury as a result of work-related stress under the requirements of Sparks.
In addition to establishing a work-related injury under Soileau, plaintiffs must show that this injury caused the decedent to become so mentally impaired that he did not have the capacity to form a “conscious volition” to end his life. The only expert witness at trial, Dr. Robert Richoux, a psychiatrist, testified that Greg Perniciaro suffered from a work-related mental illness which caused him to believe that his only alternative was suicide. This assessment was based upon the depositions of Pernicia-ro’s widow, son, co-workers, friends, and supervisors, his work record, and the suicide note. Plaintiffs contend that the trial court should have deferred to Richoux’s “unrebutted opinion” that Perniciaro suffered from the required “mental illness” under Soileau.
Under Louisiana law, the value of an expert witness’ opinion depends on the existence of the facts on which it is predicated. Russ v. Jones, 580 So.2d 1098 (La.App. 4th Cir.1991). For an expert opinion to carry much weight, the facts on which it is based must be substantiated by the rec *778 ord. Russ v. Jones, supra; Audubon Ins. Co. v. State Farm Mut. Ins. Co., 425 So.2d 907 (La.App. 4th Cir.1983). Even uncontra-dieted expert testimony regarding the underlying facts is not binding on the court, but it may not be lightly disregarded. Russ v. Jones; supra; Matthias v. Brown, 551 So.2d 821 (La.App. 3rd Cir.1989), writ denied, 556 So.2d 1263 (La.1990).
Applying these principles, we find that the trial court was not erroneous in disregarding Dr. Richoux’s opinion concerning Greg Perniciaro’s mental state. The trial judge was not bound to accept Richoux's opinion which was undermined by the testimony of Perniciaro’s co-workers and family. This testimony indicates that Pernicia-ro was in control of his actions up until and including the date of his suicide. Pernicia-ro’s supervisors testified that Perniciaro’s work consistently received favorable reviews. Even though Perniciaro expressed some complaints about work, Perniciaro’s family and co-workers agree that there was no indication that he was contemplating suicide. While Perniciaro worked a substantial amount of overtime during the ASRM project, other members of the team worked just as much and more overtime than Perniciaro. Also Perniciaro did not complain that he was overworked nor did he request additional help. In light of the totality of the evidence presented, it was not clearly wrong for the trial court to disregard Richoux’s opinion in determining that Perniciaro’s suicidal acts were a result of his own free will.
In a similar case, the First Circuit denied death benefits to the widow of a worker who purposefully drove his vehicle into another and killed himself. Brunet v. State of Louisiana, 442 So.2d 638 (La.App. 1st Cir.1983). The Brunet Court found the Soileau disqualification appropriate because the decedent had been depressed, discouraged, and despondent over work and had expressed thoughts and worry over his “possible termination.” Similarly, Greg Perniciaro’s suicide note expressed his fears of possible termination and the effects that losing his job would have on his family. An additional similarity is that the decedent in Brunet, like Perniciaro, had not suffered a prior work-related accident or injury.
In sum, cases interpreting the Soileau disqualification have regarded melancholy, mere depression and worry about being fired, insufficient reasons to excuse the intervening act of suicide. See Brunet, supra; and Mallet v. La. Nursing Homes, Inc., 459 So.2d 178 (La.App. 3rd Cir.1984). In applying this interpretation to the instant case, we cannot find that the trial court was manifestly erroneous in disqualifying the plaintiffs from recovering death benefits.
For the foregoing reasons, the judgment of the trial court is affirmed at plaintiffs’ costs.
AFFIRMED.