647 So.2d 1308 (1994)
Glenda MORGAN
v.
The CITY OF NEW ORLEANS and the New Orleans Parish School Board.
No. 94-CA-0874.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1994.
*1309 William D. Dyess, Christopher B. Edwards, New Orleans, for plaintiff/appellant.
Clare Jupiter, Joseph West, Bryan, Jupiter, Lewis and Blanson, New Orleans, for defendant/appellee.
Before SCHOTT, C.J., and BARRY and BYRNES, JJ.
BYRNES, Judge.
Glenda Morgan appeals the involuntary dismissal of her tort suit against the Orleans Parish School Board and the City of New Orleans. We affirm.

FACTS
On the evening of November 14, 1990, Glenda Morgan was going to a PTA meeting when she tripped and fell on a sidewalk along the ground of Schaumberg Elementary School. She testified that the pavement was broken into various sized pieces, some pieces were unstable and "wobbled" when she stepped on them, and the area close to the school's driveway had missing pieces and grass. She claims that she injured her ankle.
At the close of plaintiff's case the School Board and City moved for dismissal of the case. The trial court granted the motions and stated in reasons for judgment that Ms. Morgan failed to prove that the School Board damaged the sidewalk and that the City had actual or constructive knowledge of the damaged sidewalk. Ms. Morgan's appeal asserts that 1) she established a prima facie case against the School Board and 2) the trial court committed reversible error by not admitting Dr. Noto's testimony as to whether Ms. Haus reported the condition of the sidewalk to anyone other than Dr. Noto. *1310 The School Board filed an appellee brief, but the City did not file a brief.[1]

Involuntary Dismissal
An action tried without a jury may be dismissed by a motion after the close of the plaintiff's case if the record is insufficient to grant relief on the facts and law. La. C.C.P. art. 1672(B). To decide a motion for involuntary dismissal under Article 1672(B), the judge must weigh and evaluate all the evidence presented to that point and determine whether the plaintiff established a prima facie case by a preponderance of the evidence. Barnes v. Thames, 578 So.2d 1155, 1164 (La.App. 1 Cir.), writs den. 577 So.2d 1009 (La.1991); Shafer v. State Through Department of Transportation and Development, 590 So.2d 639, 642 (La.App. 3rd Cir. 1991). See Murray v. Haspel-Kansas Investments, 395 So.2d 453, 454 (La.App. 4th Cir.1981), which set forth the standard for dismissal in a non-jury case under former Article 1810(B), now Article 1672(B). Unlike a motion for directed verdict in a jury trial, the trial judge reviews the evidence without any special inference favorable to the party opposed to the motion. Barnes v. Thames, 578 So.2d at 1164; Shafer v. State Through Department of Transportation and Development, 590 So.2d at 642. The plaintiff is not prejudiced by the Court's failure to hear the defendant's case.
A dismissal under Article 1672(B) should not be reversed absent manifest error. Shafer v. State Through Department of Transportation and Development, 590 So.2d at 642. We find no manifest error.

Theory of Liability
A public entity or political subdivision may be strictly liable under La.C.C. art. 2317 for damage caused by a thing in its care or custody and which has a vice or defect, i.e., it presents an unreasonable risk of harm. Fortune v. City of New Orleans, 629 So.2d 1126 (La.1993). Additionally, La.R.S. 9:2800 requires an additional element of actual or constructive notice in a strict liability action against a public entity. See Fox v. Housing Authority of New Orleans, 605 So.2d 643, 646 (La.App. 4 Cir.), writ den. 607 So.2d 570 (La.1992).
The Plaintiff must also establish that the defendant had actual or constructive notice of the defect in a negligence action under La.C.C. art. 2315. Carr v. Boh Brothers Construction Company, Inc., 557 So.2d 356, 358 (La.App. 4 Cir.), writs den. 559 So.2d 1353 (La.1990); Montgomery v. City of New Orleans, 537 So.2d 1230, 1231 (La.App. 4 Cir.1989).

Liability of the School Board
Morgan contends she established a prima facie case against the School Board. The City stipulated that it owns the sidewalk. The School Board stipulated that it owns the adjacent property and stated in answer to the plaintiff's request for admissions that it cuts the grass in the area around the broken sidewalk. Morgan does not contend that the School Board's grass cutting activities contributed in any way to the condition of the sidewalk that caused her injury.
The burden for tort liability arising from a defect in a public sidewalk is generally with the municipality, not the adjoining landowner. Houssiere v. Lafayette Insurance Co., 559 So.2d 903, 904 (La.App. 4 Cir. 1990). An abutting property owner is not generally responsible for the repair or maintenance of a public sidewalk except where the defect in the sidewalk was caused by that landowner. Randall v. Feducia, 507 So.2d 1237, 1239 (La.1987); Birner v. City of New Orleans, 619 So.2d 723, 725 (La.App. 4 Cir. 1993); Monteleon v. City of New Orleans, 617 So.2d 49, 50 (La.App. 4 Cir.1993); Carpenter *1311 v. State Farm Fire & Casualty Co., 411 So.2d 1206, 1211 (La.App. 4 Cir.), writ den. 415 So.2d 951 (La.1982). This exception is based on negligence under La.C.C. art. 2315. Youngblood v. Newspaper Production Co., 135 So.2d 620, 622 (La.App. 2 Cir.1961).
The evidence does not establish that the School Board has "garde", i.e., custody or control of the sidewalk in question. It is common for adjoining property owners to cut grass in sidewalk areas. Such an act has never been held to confer custody and control of a sidewalk on an adjoining landowner. Notice[2] of a defect in a sidewalk has likewise never been held to confer custody and control of a sidewalk on an adjoining landowner. Therefore, even if the School Board cut the grass in the area where the accident occurred, and/or had notice of the defect, those fact are insufficient to permit a finding that the School Board had "garde" of the site where the accident occurred. The School Board cannot be held strictly liable for any damages Ms. Morgan allegedly sustained.
In the absence of strict liability, the School Board may only be held liable under a negligence theory, i.e., where it caused the accident by creating the hazardous condition. Youngblood v. Newspaper Production Co., 135 So.2d at 122. However, absent a finding of manifest error we may not reverse the trial judge's findings on causation. Pizzaloto v. Hoover Co., 486 So.2d 124, 128 (La.App. 5 Cir.1986); Rick v. State Through DOTD, 619 So.2d 1149, 1156 (La.App. 1 Cir.1993); Jefferson v. Costanza, 628 So.2d 1158, 1160 (La. App. 2 Cir.1993).
Mr. Vanderbrook opined that the damage was caused by school buses on the sidewalk. He based that conclusion on the severity of the damage to the concrete and the proximity of a school bus zone. But we cannot say the trial court was manifestly erroneous in choosing to discount that testimony. Perniciaro v. Martin Marietta Corp., 613 So.2d 775, 778 (La.App. 4 Cir.1993); Paterson v. Meyers, 583 So.2d 79, 84 (La.App. 4 Cir.1991). The damage was such that it could have been caused by any heavy vehicles, not necessarily school buses. Moreover, neither the plaintiff nor Mr. Vanderbrook testified that they had ever seen a school bus or any other vehicle on the sidewalk. Dr. Noto testified that during the course of her seventeen years as principal at the school, she had never seen a school bus on the sidewalk. In sum, no witness could recall ever having seen any vehicle on the sidewalk.
The fact that school buses were frequently in the vicinity creates no presumption that they ever drove onto the sidewalk. Monteleon v. City of New Orleans, 617 So.2d at 51. The doctrine of res ipsa loquitur may not be employed against the adjoining landowner in a sidewalk case. Id.
Plaintiff's expert Dr. Vanderbrook testified that in his opinion soil conditions or other natural "New Orleans" conditions were not the primary causes of the sidewalk deterioration. However, he did state that when he went out to inspect the sidewalk three years after the accident he found that "... it was in generally, the same condition. It's a little bit worse now." The trial court could reasonably have assumed that such a slow rate of deterioration after the accident was indicative of the rate of deterioration prior to the accident, and that both were indicative of deterioration over an extended period time. The court could have concluded reasonably that such deterioration occurred gradually over many years.
As this Court noted in Monteleon v. City of New Orleans, 617 So.2d at 50:
Those exceptional cases that have imposed liability on the adjoining landowner involved obstructions placed on the sidewalk by the landowner, or immediate damage inflicted on the sidewalk by the landowner. (Emphasis added)
Implicit in Monteleon is an understanding that even in those instances where it can be shown that the activities of the adjoining *1312 landowner may have contributed over time to the deterioration of the sidewalk, that the landowner will not be held responsible where such activities involve the normal use of such property. It is only normal to expect an adjoining landowner to have more impact on the sidewalk adjacent to his property than more distant third parties. It would only be normal for pedestrian traffic on City sidewalks adjacent to schools and vehicular traffic adjacent to those sidewalks, especially near entrances, and driveways, to be heavier than in strictly residential areas, resulting in a greater degree of wear and tear to such sidewalks. We do not believe that it was ever intended that this should constitute a sufficient basis for shifting responsibility from the City to the school. Additionally, the public utility of schools militates against the creation of such a duty to sidewalk pedestrians under such circumstances.
Based on the foregoing, this Court can find no manifest error in the judgment of the trial court in favor of the School Board.

Liability of the City
Morgan contends the trial court erred by refusing to allow Dr. Noto to testify as to statements made by the school's now-deceased head custodian. Morgan argues the statements would have established notice to the City and are admissible as an exception to the hearsay exclusionary rule.
Hearsay is a statement other than one made by the declarant while testifying at the present trial, offered in evidence to prove the truth of the matter asserted. La.C.E. art. 801(C). Hearsay is generally inadmissible. La.C.E. art. 802.
Article 804 of the Code of Evidence sets forth hearsay exceptions when the declarant is "unavailable," including unavailability because of death. La.C.E. art. 804(A)(4). Those exceptions include 1) former testimony; 2) a statement made under belief of impending death; 3) a statement against interest; 4) a statement of personal or family history; and 5) records of regularly conducted business activity (applicable in criminal cases).
Article 804(B)(6) is pertinent here and reads in part:
(6) Other exceptions. In a civil case, a statement not specifically covered by any of the foregoing exceptions if the court determines that considering all pertinent circumstances in the particular case the statement is trustworthy, and the proponent of the evidence has adduced or made a reasonable effort to adduce all other admissible evidence to establish the fact to which the proffered statement relates and the proponent of the statement makes known in writing to the adverse party and to the court his intention to offer the statement and the particulars of it, ... sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it....
The residual exception of Article 804(B)(6) is available only in extraordinary circumstances. La.C.E. art. 804(B)(6), comment (b). That article reflects the standard of necessity and trustworthiness. Buckbee v. United Gas Pipe Line Company, Inc., 561 So.2d 76 (La.1990). No circumstantial evidence was adduced to show the trustworthiness of the statement to establish its reliability. Compare Buckbee v. United Gas Pipe Line Company, Inc., supra, which held that testimony regarding the decedent's statement lacked the "circumstantial guarantees of trustworthiness which would overcome the hearsay bar posed by (the decedent's) unavailability to testify...." Id. at 82. Additionally, there is no evidence that Ms. Morgan made known in writing to defendants and the court her intention to offer the statement in advance of the trial as required by Article 804(B)(6). The trial court did not err by refusing to allow the testimony.
The only evidence offered by the plaintiff to prove notice to the City was this properly excluded hearsay testimony. Ms. Morgan does not contend that there was any other evidence of notice. Therefore, having sustained the exclusion of that testimony, we *1313 have no basis for reversing the trial court's judgment in favor of the City.
For the foregoing reasons the judgment of the trial court is affirmed.
AFFIRMED.
BARRY, J., dissents in part.
BARRY, Judge, dissenting in part.
I agree that Dr. Noto's testimony as to the deceased head custodian was inadmissible. I disagree with the majority's conclusion concerning the involuntary dismissal of the School Board.
Dr. Mildred Noto, the principal of Schaumberg, testified that the only vehicular traffic in the area of the accident was school buses and commercial food services.
Fred Vanderbrook is an engineer and expert in failure analysis and accident causation. Mr. Vanderbrook examined pictures of the sidewalk and visited the accident site, and stated that the broken walkway was in a school bus loading zone near a driveway into the school property. He said normal ground settlement causes a sidewalk to lean, but the condition he saw did not result from normal soil subsidence. Based on the severity of the concrete damage and that it was in a school bus zone, Mr. Vanderbrook opined that the sidewalk was damaged by heavy vehicular traffic.
The pictures in evidence show that the sidewalk is more damaged closer to the school driveway in the area where Morgan fell. Considering Mr. Vanderbrook's testimony that the sidewalk was damaged by heavy vehicular traffic and that it was dilapidated in the school bus loading zone and close to the school driveway, Morgan established by a preponderance of the evidence that the damage was caused by school buses.
The trial court clearly erred by finding otherwise.
NOTES
[1] At the close of Morgan's case counsel for both defendants moved for "summary judgment." In their appellate briefs counsel referred to the dismissal as a directed verdict. A directed verdict is applicable to jury trials. An involuntary dismissal is applicable to non-jury trials. See La. C.C.P. arts. 1810 and 1672 and the comments.
[2] Dr. Noto, the school principal, testified that she had notice from the school custodian.