459 So.2d 178 (1984)
Noemie MALLET, Plaintiff-Appellee,
v.
LOUISIANA NURSING HOMES, INC., et al., Defendants-Appellants.
No. 83-953.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1984.
Rehearing Denied December 13, 1984.
Writs Denied February 8, 1985.
*179 J. Louis Gibbens of Gibbens & Blackwell and Dennis R. Stevens, New Iberia, for defendants-appellants.
Michael L. Schilling, Jr., Abbeville, for plaintiff-appellee.
Before DOMENGEAUX, CUTRER and LABORDE, JJ.
LABORDE, Judge.
This is an appeal from a workers' compensation case. Plaintiff employee and defendants employer and insurer each contend that the trial court erred. We find no error. We affirm.
On May 10, 1976, plaintiff Noemie Mallet injured her back in the course and scope of her employment with defendant Louisiana Nursing Homes, Inc. Plaintiff slipped while she was cleaning the shower area of one of Louisiana Nursing Home's health care facilities for the aged. The primary injury apparently occurred as a result of the impact of plaintiff's lower back on ceramic tile covered structures. Defendant employer and its compensation underwriter, defendant Zurich Insurance Company, did not contest the coverage of plaintiff's injury under the Workers' Compensation Act. Defendants have provided plaintiff with compensation payments and medical benefits since the date of injury. Plaintiff filed the suit from which this appeal is taken because defendants refused to pay certain medical and incidental expenses and because of an error in the calculation of compensation benefits that resulted in a substantial underpayment of compensation to plaintiff between May of 1976 and May of 1983.
The trial judge found that compensation benefits had been miscalculated. He adjudged defendant insurer liable for past underpayments, awarding plaintiff the lump sum of the difference between the amount of compensation benefits actually paid between May of 1976 and May of 1983 *180 and the amount that should have been paid. Defendant sought to offset this award or receive a credit for future payments because of the receipt by plaintiff of certain Social Security disability benefits during the same time period. The trial judge did not allow this offset or credit. Plaintiff claimed that defendant insurer had acted arbitrarily, capriciously, or without probable cause in underpaying plaintiff's compensation benefits and, therefore, defendant should pay attorney fees and penalties for the undercompensation. The trial judge found that defendant had not acted arbitrarily, capriciously, or without probable cause.
The trial judge found that medical bills for two periods of hospitalization in Abbeville which were not contested by defendants and were paid by the insurer were nevertheless paid untimely. The trial judge awarded plaintiff statutory penalties and attorney fees for these late payments.
Defendant insurer had refused to pay for two periods of hospitalization of plaintiff, including surgery, at Tulane Medical Center. The trial judge found that defendant insurer was obligated to pay the medical bills and expenses for the two periods of hospitalization at Tulane Medical Center, and he ordered defendant to pay plaintiff for these bills and expenses. The trial judge found that defendant insurer had not acted arbitrarily, capriciously, or without probable cause in refusing to pay these bills and expenses. He based this finding on conflicting medical reports and testimony as to the necessity and wisdom of the treatments at Tulane. Defendants requested that they be allowed to make payment for these bills directly to the health care providers, rather than to plaintiff. The trial judge denied this request.
The trial judge also considered plaintiff's claim for certain incidental prescription drug expenses and travel expenses. He adjudged defendant insurer liable for these expenses.
The trial judge found that defendant insurer was not liable for medical and incidental expenses incurred by plaintiff as a result of plaintiff's attempted suicide in 1981.
In this appeal, plaintiff and defendants contend that the trial judge committed several errors. Plaintiff contends:
(1) The trial judge erred by not finding that defendants acted arbitrarily, capriciously, or without probable cause in underpaying plaintiff's compensation benefits.
(2) The trial judge erred by not finding that defendants acted arbitrarily, capriciously, or without probable cause in refusing to pay for the two hospitalizations of plaintiff at Tulane Medical Center.
(3) The trial judge erred by finding that expenses incurred by plaintiff in connection with her attempted suicide were not covered under the Workers' Compensation Act.
Defendants contend:
(1) The trial judge erred by rejecting defendants' request to pay directly to health care providers the amounts that defendant insurer was adjudged to owe as medical benefits.
(2) The trial judge erred by not allowing defendants to offset the amount awarded to plaintiff for past undercompensation with the amount of federal disability benefits that plaintiff had received during the same time period; or, in the alternative, to receive credit for the amount of federal disability benefits that plaintiff had received.
We will separately consider the contentions of plaintiff and defendants.

UNDERPAYMENT OF COMPENSATION BENEFITS
As noted previously, defendants have never contested the coverage of plaintiff's initial injury under the Workers' Compensation Act. Defendants have paid most medical costs claimed by plaintiff, and have provided her with compensation benefits since the date of the injury (May 10, 1976).
*181 However, in the suit from which this appeal is taken, plaintiff correctly claimed that the amount of defendant insurer's payment of compensation benefits has been lower than that which it is statutorily required to pay. The cause of this underpayment can be traced to the employer's first report of injury, which is a standard form used by insurers to calculate compensation benefits. Plaintiff completed this report for her employer on June 2, 1976. Plaintiff stated that her hourly wage at the time of the accident was $2.20 per hour, that she worked seven and one-half hours per day for a daily wage of $16.50, and that she worked five days per week.[1] Plaintiff, however, incorrectly stated that her average weekly wage was $50.00.
The insurer calculated compensation payments from the $50.00 amount provided by plaintiff. Thus, plaintiff received $33.33, or two-thirds of $50.00, per week as compensation. See LSA-R.S. 23:1221(1) & (2)(a).
Under the law then in force, plaintiff's weekly compensation should have been calculated from the figure derived by multiplying her hourly wage by forty hours work per week. See LSA-R.S. 23:1021(7)(a) (West 1964) repealed by La. Acts 1983, 1st Ex.Sess., No. 1, sec. 1. Thus, plaintiffs' weekly compensation benefits should have been two-thirds of $88.00, or $58.66 per week. This error was brought to the attention of the trial judge, and he adjudged defendant liable for the past underpayment resulting from the error. However, the trial judge refused to hold defendant insurer liable for statutory penalties and attorney fees on the basis of the miscalculation; he found that defendants did not arbitrarily, capriciously, or without probable cause miscalculate and underpay compensation benefits. We agree.
At all relevant times in this case, the statutory provisions governing this issue provided for attorney fees and a 12% penalty on the difference between the amount paid or tendered and the amount actually due, in the event of undercompensation of a disabled worker by a compensation insurer, see LSA-R.S. 22:658 (West 1978), or an uninsured employer, see LSA-R.S. 23:1201.2(A) (West 1964), if such undercompensation was arbitrary, capricious, or without probable cause.[2] The trial judge found that defendant insurer had not undercompensated plaintiff in a manner punishable by the imposition of penalties and attorney fees under the relevant statutory section, in part because the error in calculation was based on a weekly earnings figure provided by plaintiff herself, and also because plaintiff accepted the payments without objection until suit was filed in May of 1983.
As plaintiff notes in her brief, even a poor mathematician would see the error in the $50.00 weekly earnings figure supplied by plaintiff upon a review of the other figures supplied by plaintiff. We note, furthermore, that under the law then in force, plaintiff's actual weekly earnings figure, even correctly calculated, would not have provided the basis for calculating weekly benefits; rather, her hourly wage multiplied by forty would be the correct base upon which to calculate the benefits. Under the law of Louisiana, however, we may not punish the insurer simply because it did not review the other figures supplied by plaintiff, or simply because it erred in its assessment of the import of the figures. Instead, we ask whether, under the circumstances, the undercompensation caused by reliance on plaintiff's statement of her *182 weekly earnings shows that the insurer acted arbitrarily, capriciously, or without probable cause.
The obverse of action that is arbitrary, capricious, or without probable cause is action that is rational. See Doyle v. United General Insurance Co., 458 So.2d 152, 156 (La.App. 3d Cir.1984). Thus, put another way, if defendant insurer acted rationally, though not correctly, in miscalculating plaintiff's benefits, we must not assess penalties and attorney fees.
On the facts of this case, we find that defendant insurer acted rationally. It acted incorrectly, but this action was based on a good faith attempt to calculate compensation benefits from information supplied by plaintiff.[3] The standard we apply is not one of negligence; we do not ask whether the insurer met a standard of reasonable care. Rather, we ask whether the insurer's action was so devoid of reason as to constitute conduct which may be labelled "arbitrary, capricious, or without probable cause." This standard is necessarily, and by definition, lenient. The legislatively provided sanctions of penalties and attorney fees are penal in nature, and should not be imposed if the facts of the case provide a rational basis for the error of the insurer. See, e.g., Martin v. H.B. Zachry Co., 424 So.2d 1002, 1008 (La.1982). In the present case, the insurer erred by relying on plaintiff's statement of her weekly earnings. The insurer, perhaps negligently, did not properly consider other figures provided by plaintiff. But reliance on the weekly earnings figure provided by plaintiff was not arbitrary, capricious or without probable causesuch figures usually provide the proper basis upon which compensation benefits should be calculated. Although it would be better practice to verify and to double-check all earnings information provided by injured employees, the conduct of the insurer in this case is not so devoid of reason as to warrant the imposition of the statutory sanctions. In workers' compensation cases, the imposition of penalties and attorney fees promotes the sound policy of discouraging "attitudes of indifference to the injured employee's condition." Guillory v. U.S. Fidelity & Guar. Ins. Co., 420 So.2d 119, 124 (La.1982). This policy is not promoted through the punishment of rational, good faith mistakes, such as the mistake committed by the insurer in miscalculating compensation benefits in this case. The insurer arguably was somewhat careless, but certainly not indifferent.
Plaintiff argues that Green v. Provencal Tie Mill, 392 So.2d 722 (La.App. 3d Cir. 1980) is factually indistinguishable from the present case on this issue, and that, just as the undercompensation in that case was held to be arbitrary, capricious, or without probable cause, so is the undercompensation in this case arbitrary, capricious, or without probable cause. Plaintiff misreads Green. In that case, the insurer not only miscalculated benefits, but also refused to correct the undercompensation after the plaintiff promptly pointed out the error, and even after the plaintiff hired an attorney and filed suit. Id. at 725. In this case, plaintiff neither noticed nor complained of the error until the present suit was filed. It is obvious that the failure to correct the undercompensation resulted in the imposition of sanctions in the Green case. See also McElhaney v. Belden Corp., 376 So.2d 539, 547 (La.App. 3d Cir. 1979); Campanella v. State, Dept. of Highways, 328 So.2d 798, 801 (La.App. 1st Cir.1976).
The trial judge did not err by failing to assess statutory penalties and attorney fees based on defendant insurer's undercompensation of plaintiff.

NON-PAYMENT OF TULANE MEDICAL CENTER EXPENSES
Plaintiff had received extensive medical treatment and had been examined by numerous *183 doctors by the time she elected to be treated and to have surgery at Tulane Medical Center. The medical evidence neither clearly supported the necessity of this surgery and treatment nor did it clearly rule out the possibility that the surgery and treatment might help plaintiff. Certain medical reports recommended that plaintiff not have further surgery, because such surgery would be more likely to aggravate her back problems than to provide her with relief. The insurer refused to pay for the surgery and other expenses incurred in the two trips to and confinement in Tulane Medical Center.
The trial judge found defendant insurer liable for the medical and incidental expenses incurred by plaintiff in connection with the two hospitalizations at Tulane Medical Center. He found that the treatment and the surgery were designed to alleviate pain, even though the benefits of the treatment and surgery were doubtful. See Gourdon v. Rockwood Ins. Co., 368 So.2d 1156, 1158 (La.App. 3d Cir.1979). The trial judge found, however, that based on the conflicting medical evidence, defendant insurer was not arbitrary, capricious, or without probable cause in refusing to pay for these hospitalizations. We agree.
A compensation insurer or an uninsured employer is not liable for penalties and attorney fees merely because its rational assessment of the facts and the law applicable to a claim for medical benefits differs from the ultimate conclusion of a trial court. Doyle v. United General Insurance Co., 458 So.2d 152, 155-156 (La. App. 3d Cir.1984). Before the statutory sanctions may be imposed, it must be determined that refusal to pay the claim is so unsupported by the relevant law, as applied to the facts of the case, that such refusal is arbitrary, capricious, or without probable cause. The conflicting medical evidence in the present case amply illustrates that defendant insurer did not deny plaintiff's claim arbitrarily, capriciously, or without probable cause. Guidry v. Sline Industrial Painters, Inc., 418 So.2d 626, 635 (La. 1982); McDonald v. International Paper Company, 406 So.2d 582, 584 (La.1981).
COVERAGE OF MEDICAL AND INCIDENTAL COSTS INCURRED AS A RESULT OF PLAINTIFF'S ATTEMPTED SUICIDE
On April 25, 1981, plaintiff informed her husband that she was leaving for several days, and that she planned to visit her mother. Instead, plaintiff procured a room at a nearby motel. She wrote two suicide notes, consumed several bottles of pills that had been prescribed to her as pain-relievers and sleeping aids, and drank about one-half of a bottle of Jack Daniels bourbon. She was later discovered in an unconscious condition. Plaintiff was transported to a hospital and revived and treated. Defendant insurer refused to pay for expenses, medical and otherwise, incurred by plaintiff as a result of the suicide attempt. The trial judge found that defendant insurer was not liable for these expenses. We agree.
Plaintiff's basic argument is that the suicide attempt was caused by some form of mental disease that was caused by her prolonged use of prescriptive depressant narcotics that was necessary to alleviate the pain that was caused by the back injury that arose out of and in the course of her work. Thus, plaintiff's argument continues, if defendant insurer must pay medical and incidental expenses more closely related to the original injury, then so must the insurer pay medical and incidental expenses resulting from the suicide attempt that logically followed the original injury.
Guidance on this issue is provided by the decision of this court in Soileau v. Travelers Insurance Company, 198 So.2d 543 (La.App. 3d Cir.), writ denied, 250 La. 978, 200 So.2d 665 (1967). In Soileau, we studied the jurisprudence of other jurisdictions and concluded that
"where death is caused by suicide, death benefits may not be recovered under the Louisiana Workmen's Compensation Act unless it is established that the suicidal act was the product of some form of *184 insanity, mental disease, mental derangement or psychosis, which resulted from the injury. Otherwise, a suicide is attributable to the decedent's own volitional act which constitutes an "independent intervening cause." It is not sufficient for recovery to show that the suicide resulted merely from the fact that the decedent had become discouraged, depressed, despondent or melancholy as the result of the accident or injury."
Id. at 546. Although Soileau dealt with a "successful" suicide, we see no reason not to apply its persuasive reasoning to claims for medical and incidental benefits by one who lives through the suicide attempt.
In this case, the trial judge accurately noted the distinction drawn by Soileau between serious mental disease on the one hand, and depression or melancholia, on the other hand. He found, as a matter of fact, based on all the relevant lay and medical testimony presented to him, that although plaintiff may have attempted suicide as a result of despondency caused by her injury, the suicide attempt was not the product of mental disease or psychosis caused by her injury or the drugs used to treat her injury. A factual determination of this nature will not be disturbed on appeal unless it is clearly wrong, in light of all the evidence. Harris v. State Through Huey P. Long Memorial Hospital, 378 So.2d 383, 389 (La. 1979); Arceneaux v. Domingue, 365 So.2d 1330, 1333 (La.1978); Roussel v. Colonial Sugars Company, 318 So.2d 37, 39 (La. 1975). The trial judge was not clearly wrong in his factual determination that plaintiff's suicide attempt was not the result of mental disease caused by her injury or her prescription drug use.
We have disposed of plaintiff's contentions on appeal. We now turn to the two claims of error presented by defendants.

PAYMENT OF MEDICAL BENEFITS DIRECTLY TO HEALTH CARE PROVIDERS
Defendants present a strong and meritorious argument as to why they should be allowed to pay the health care providers, rather than plaintiff, for any medical benefits they are adjudged to owe in this case. Defendants first point out that, in this case, some (if not all) of the late payments of medical bills resulted from delays attributable to plaintiff's interposal between defendant insurer and the health care providers. Second, defendants contend that payment to plaintiff could result in money in her pocket in addition to weekly compensation benefits, should plaintiff satisfy her medical bills from other, non-personal sources (e.g., Medicare). Third, defendants contend that much unnecessary litigation has occurred because of payment to the injured employee, rather than to the health care provider, of medical benefits due under the Workers' Compensation Act or other medical insurance schemes. See, e.g., Our Lady of Lake Med. Ctr. v. Cropper, 401 So.2d 403 (La.App. 1st Cir.), writ denied, 404 So.2d 279 (La.1981). Defendants assert that the obligation to provide medical benefits under the Workers' Compensation Act and the obligation to provide disability compensation benefits under the Act are separable. Defendants contend that while compensation benefits necessarily must be paid to the injured worker, the fulfillment of the obligation to pay medical benefits does not turn on whose hand first receives the money, but instead turns on whether the insurer actually pays for the necessary medical expenses of the worker.
Clearly, the dual obligations of the compensation insurer or the uninsured employer to provide compensation benefits and to provide medical benefits are separable and distinct. E.g., Butts v. Insurance Co. of North America, 352 So.2d 745, 748 (La.App. 3d Cir.1977), writ denied, 354 So.2d 206 (La.1978). Further, the relevant section of the Workers' Compensation Act simply provides the obligation to "furnish all necessary medical, surgical, and hospital services, [etc.]." LSA-R.S. 23:1203 (emphasis added). The Act specifies payment to no particular party; it merely requires the employer to furnish these services at no cost to the worker. Whether payments are made to the health care providers, the *185 injured employee who then pays the health care providers, or through some other agreement between concerned parties is irrelevant: the law only requires that the injured worker be treated at no personal cost.
Whether the worker or the health care providers are to be paid by the compensation insurer or uninsured employer is a matter governed by the agreement between the parties. We note that most compensation insurance contracts used in Louisiana specify payment to the employee. Further, as a matter of course, most payments are made in drafts to the injured employee. We find no legal objection to a different arrangement, but, on the record before us, there is no indication that the insurance contract covering plaintiff provided for medical benefits payments to one other than the injured employee. Therefore, we affirm the decision of the trial judge.
If defendants could show that plaintiff will be unjustly enriched by medical benefits payments to her, our decision would be different. Our decision would then be based on the public law of this state which prohibits unjust enrichment, and the private contract law between the parties would present no obstacle to our decision. However, under the facts of this case, defendants show nothing in excess of the common-sense proposition that direct payment to health care providers would be more convenient and simple for all parties involved. These matters are left to the private law of the insurance contract.
OFFSET OF OR CREDIT FOR FEDERAL DISABILITY BENEFITS AGAINST AWARD FOR UNDERCOMPENSATION
From May of 1976 to May of 1983 (and apparently since that time), plaintiff received monthly Social Security disability benefits. As discussed above, defendant insurer underpaid plaintiff's compensation benefits during that time period. The trial judge in this case adjudged defendant liable for the difference between compensation paid and compensation legally due. He refused to allow an offset or credit for federal benefits, finding that the right of offset had been created after plaintiff's injury and was therefore inapplicable to the case.
Defendants argue that the trial judge erred, and that the insurer should be able to offset against the undercompensation award or receive credit for amounts that plaintiff received as federal disability benefits. Defendants contend that legislation passed in 1978 allows this offset or credit, to wit:
"The benefits provided for in this Subpart for injuries producing permanent total disability shall be reduced when the person receiving benefits under this Chapter is entitled to and receiving benefits under 42 U.S.C. Chapter 7, Subchapter II, entitled Federal Old Age, Survivors, and Disability Insurance Benefits, on the basis of the wages and self-employment income of an individual entitled to and receiving benefits under 42 U.S.C. Section 423; provided that this reduction shall be made only to the extent that the amount of the combined federal and worker's compensation benefits would otherwise cause or result in a reduction of the benefits payable under the Federal Old Age, Survivors, and Disability Insurance Act pursuant to 42 U.S.C. sec. 424a, and in no event will the benefits provided in this Subpart, together with those provided under the federal law, exceed those that would have been payable had the benefits provided under the federal law been subject to reduction under 42 U.S.C. sec. 424a. However, there shall be no reduction in benefits provided under this Section for the cost-of-living increases granted under the federal law after the date of the employee's injury."
LSA-R.S. 23:1225(A).
Defendants have not shown the amount (if any) of the retroactively applied reduction entailed by section 1225, should we find the section applicable to this case. Defendants merely claim that the total amount of federal disability benefits received *186 by plaintiff during the period in question should be offset against the award for past undercompensation. The reduction of benefits computation set forth in section 1225 does not operate so simply; for example, defendants have not shown that payment in full of both workers' compensation disability benefits and federal disability benefits would, in combination, subject plaintiff to "a reduction of the benefits payable under the Federal Old Age, Survivors, and Disability Insurance Act pursuant to 42 U.S.C. sec. 424a...." Section 1225 aids employers and insurers by reducing the amount of disability compensation benefits they are obligated to pay in an appropriate case. To utilize this statute, the present defendants must first show that this is an appropriate case (i.e., that a reduction is required), and second, defendants must set forth the amount of offset or reduction entailed by the terms of the statute for this case. Defendants have met neither requirement. See Achord v. H.E. Weise Const. Co., 422 So.2d 1248, 1253 (La.App. 1st Cir.1982) (defendant failed to meet its "burden of proof" under section 1225 "with regard to the amount of Social Security benefits [received by plaintiff] or to the amount of reduction in compensation benefits which might be required").
Because defendants have not met their burden of proof under the terms of section 1225, it is unnecessary for us to decide whether section 1225 could be retroactively applied to this case. The trial court did not err by disallowing the offset or credit sought by defendants.

DECREE
There is no error. Based on the above reasons, the judgment of the trial court is affirmed. Plaintiff Noemie Mallet answered defendants' appeal by claiming several additional grounds for error and seeking reversal or modification of those portions of the judgment below unfavorable to plaintiff. Therefore, we tax the costs of this appeal one-half to plaintiff and one-half to defendants.
AFFIRMED.
DOMENGEAUX, J., concurs in the result.
NOTES
[1] The record reveals that plaintiff did not work five days every week. She worked a schedule of four days on, then two days off. R. at 61. Therefore, over a six-week span, plaintiff actually worked five days during four weeks and four days during two weeks, or an average of four and two-thirds days per week.
[2] In 1983, the Louisiana Legislature amended R.S. 23:1201.2 to cover both insurers and uninsured employers and to prohibit the use of R.S. 22:658 in cases involving non-payment or underpayment of workers' compensation claims. The 1983 amendment does not provide for penalties, only for attorney fees. See La. Acts 1983, 1st Ex.Sess., No. 1, sec. 1 (effective July 1, 1983). For an explanation of the dichotomy under the old law, see Gauthier v. Employers National Insurance Co., 316 So.2d 769, 775 (La.App. 1st Cir.1975).
[3] In her brief, plaintiff contends that the error of the insurer was not made in good faith; she contends that the error, in light of other information available to the insurer, "is tantamount to willful miscalculation." The trial judge apparently disagreed with plaintiff on this issue. A finding of good faith, or a lack thereof, is an issue of fact. We will not substitute our judgment on factual issues for the judgment of the trial court unless the factual findings of the trial court are clearly wrong.