568 So.2d 221 (1990)
Lou Elise DOMINGUE, Plaintiff-Appellee,
v.
The HARTFORD INSURANCE COMPANY (Hartford Accident & Indemnity Company), Defendant-Appellant.
No. 88-1253.
Court of Appeal of Louisiana, Third Circuit.
October 3, 1990.
Writ Denied December 14, 1990.
*222 Dean, Lomenick & Seemann, G. Douglas Dean, Opelousas, for plaintiff/appellee.
Jeansonne & Briney, Charles J. Foret, Lafayette, for defendant/appellant.
Before DOUCET, YELVERTON and KING, JJ.
YELVERTON, Judge.
In this appeal of a workmen's compensation judgment in favor of the worker, Lou Elise Domingue, we remanded to ascertain whether the adoption by the trial court of the commissioner's findings and recommendations was made following a de novo determination based on the record of the proceedings. 560 So.2d 87. The case is now back before us following remand with assurances by the trial judge that he has complied with the requirement of a de novo determination of disputed findings or recommendations. We now address the appeal.
Lou Elise Domingue was injured on April 5, 1985, in the course and scope of her employment for Lafayette General Medical Center. The Hartford Insurance Company, as the workmen's compensation insurance carrier for the medical center, paid medical expenses and weekly compensation benefits at the rate of $248 per week through January 24, 1986. Benefits were terminated on that date. The plaintiff sued.
The case was assigned for hearing to a commissioner who made the following findings and recommendations:
(1) the plaintiff was permanently and totally disabled;
(2) the plaintiff was entitled to penalties and attorney's fees;
(3) the defendant was not entitled to reduce plaintiff's weekly compensation benefits to reflect plaintiff's receipt of social security benefits; and
(4) the defendant was not entitled to reduce the plaintiff's weekly compensation benefits to reflect plaintiff's receipt of benefits pursuant to a retirement plan funded by Lafayette General Hospital.
The defendant disputed each of these findings, and after a review of the record, the trial judge made a de novo determination to adopt the commissioner's report, and signed a judgment in plaintiff's favor. The issues on appeal are the four above listed disputed findings and recommendations. We will now discuss each of these issues.

PERMANENT AND TOTAL DISABILITY
Ms. Domingue, 60, a practical nurse since 1947, slipped and fell at work at Lafayette General on April 5, 1985, with sufficient force to strike her head and cause a period of unconsciousness. Dr. Luis C. De-Arujo, a neurosurgeon, saw her in the emergency room. He treated her thereafter and at trial testified that she had a brain concussion from which she recovered, a strain of the muscles and ligaments of the neck and lower back from which she was fairly well recovered, and an aggravation of a preexisting spondylolysis (arthritis of the neck) from which she had not, and in his opinion would not, recover. Dr. Robert Martinez, a neurologist, who saw and tested the plaintiff several times at the request *223 of Dr. DeArujo, confirmed these findings and conclusions. Both of these doctors testified that as a result of this accident, Ms. Domingue suffered an aggravation of her condition which would permanently result in intense and disabling pain on the slightest exertion. Because of the pain factor, neither doctor believed that Ms. Domingue could ever go back to being a nurse or to any type of employment requiring any physical exertion.
Ms. Domingue testified, as did her daughter, explaining how active she had always been at work and around the house before her accident, and her inability to do much of anything after the accident. The two treating doctors, as well as the commissioner, stated that Ms. Domingue was telling the truth. Thus the great preponderance of the testimony, both lay and medical, confirmed her inability to do any physical work at all, such as housework or yard work, without severe aggravation of the pain in her neck and shoulders. The testimony placed severe restrictions on her activities, including limitations on standing and sitting for periods of time, turning of the head, or lifting anything over five pounds.
The only contrary evidence of disability was the testimony of Dr. William L. Meuleman, an orthopedist, who examined the plaintiff once at the request of the insurer. Dr. Meuleman, although finding evidence of some arthritis, felt that she could do the work of a practical nurse, and that she could at least do the work of a sitter at a hospital. The trial court discounted this opinion, however, because such work involves lifting and turning patients, something the plaintiff could not do.
All of the three doctors testifying in the case knew Ms. Domingue personally. They had observed her at her work before the accident and commented favorably on how energetic and uncomplaining she had always been. As stated earlier, her two treating physicians were impressed with her honesty, believed that she indeed suffered unusual pain on exertion, and their histories included findings of objective evidence of spasms in the neck muscles following reports by the patient that she had just incurred a flair up as a result of minor exertions.
The defendant called a vocational rehabilitation specialist who testified there were jobs Ms. Domingue could do. The commissioner found this testimony "unworthy of serious consideration". This finding was based on the specialist's use of incorrect premises in reaching his conclusions.
Our review of the facts of this case supports the finding by the commissioner that Ms. Domingue proved by clear and convincing evidence that she is physically incapable of performing any employment without pain. While the requirements of L.R.S. 23:1221(2) are very strict standards for establishing permanent and total disability, placing the burden of proof on the plaintiff to establish by clear and convincing evidence her physical inability to engage in any employment or self employment, the trial judge was convinced that she had met those requirements. The manifest error rule is applicable to a review of workmen's compensation cases. Beckham v. Commercial Union Ins. Co., 517 So.2d 886 (La.App. 3rd Cir.1987). Whether the plaintiff here was unable to pursue any gainful employment without experiencing substantial pain is a question of fact and, like questions of credibility of the witnesses, the conclusions of the trial court regarding such matters must be given great weight on appeal. Stewart v. Ormond Country Club, 542 So.2d 658 (La.App. 5th Cir.1989), writ denied, 544 So.2d 408 (La.1989). We can discern no error in the conclusions of the trial judge in his finding of total and permanent disability.

PENALTIES AND ATTORNEY'S FEES
The trial court found that the termination of benefits under the circumstances justified the imposition of penalties and attorney's fees. The trial judge fixed attorney's fees at $2500.
Benefits were terminated on January 24, 1986 for the reason: "employee able to resume employment at same or greater wage". The trial court correctly interpreted the termination to be based solely on the *224 report of the evaluating physician, Dr. Meuleman, following his examination in November of 1985. The trial court adopted the commissioner's following explanation:
The defendants knew of the positions taken by the plaintiff's two treating physicians, Dr. DeArujo and to a lesser extent, Dr. Martinez. The defendants, apparently unsatisfied with the findings of the treating physicians, sent Mrs. Domingue to Dr. Meuleman for one examination in November of 1985. Dr. Meuleman could not find the defendant fit to return to her former duties as an LPN because of the fact that he still recommended psychological treatment. The plaintiff's treating physicians, Dr. DeArujo and Dr. Martinez, clearly found from a physical standpoint that the plaintiff was unable to function as an LPN. Despite all these facts, the defendants chose to terminate compensation benefits to Mrs. Domingue effective January 24, 1986. This termination of benefits was inconsistent [with] the evidence which the defendant had at that time and accordingly, this Court finds that the said conduct by the defendants was arbitrary and capricious and recommends the awarding of penalties and attorney fees to the plaintiff in this case.
This finding is supported by the record. The opinions of Drs. DeArujo and Martinez never wavered that plaintiff was unable to return to her former work or any other kind of physical work. In Dr. Meuleman's report of November 19, 1985, he indicated that her primary problem was that she felt she was forgetful and unable to think straight, and he recommended that for this she see a psychologist for reassurance. In this report, he did not make it clear whether seeing a psychologist was a recommended prerequisite to returning to work at the hospital; however, in his later testimony he made it clear that that was what he meant. In fact, he noted that the hospital would have insisted upon it. She never saw a psychologist.
Injured employees may not be cut off of compensation on the basis of inconclusive medical reports. Wiley v. Southern Cas. Ins. Co., 380 So.2d 214 (La.App. 3rd Cir. 1980). Also, it is incumbent upon the insurer to make a reasonable effort to ascertain a plaintiff's condition at the time at which compensation benefits are terminated. Id.
Statutory penalties were awarded under La.R.S. 23:1201 on the ground that the insurer did not reasonably controvert the claimant's right to benefits. Attorney's fees were awarded under La.R.S. 23:1201.2, based upon a finding that the conduct of the insurer was arbitrary and capricious. These findings were not manifestly wrong. See Aguillard v. Industrial Const. Co., Inc., 542 So.2d 774 (La.App. 3rd Cir.1989). We find no error in the award of penalties and attorney's fees.

CREDIT FOR SOCIAL SECURITY BENEFITS
The defendant by answer to the original petition made judicial demand for a reduction in benefits because plaintiff was receiving social security benefits, in reliance on La.R.S. 23:1225. Subsection A of that statute provides for a reduction of permanent total disability benefits when the claimant is receiving Federal Old Age, Survivors, or Disability Insurance Benefits, the amount of the reduction being tied to whether social security benefits would be subject to a reduction under federal law. Subsection C(1)(b) also provides for a reduction if the claimant is receiving Old Age Insurance Benefits under Title II of the Social Security Act to the extent not funded by the employee. It is under Subsection C(1)(b) that the defendant at trial and on appeal asserts it is entitled to a reduction.
The trial court denied the demand for reduction. It explained that the record does not disclose the nature of the social security benefits which the plaintiff is receiving and that, therefore, the defendant had failed to carry its burden of proof by failing to prove that the benefits received by Ms. Domingue were the same benefits described in the Subsection C(1)(b).
We agree with the trial court. The only evidence in the record pertaining to this subject is the plaintiff's testimony she was receiving $518 a month in social security, *225 starting May 1987. Thus, there is no evidence in the record to support a reduction under La.R.S. 23:1225 A, because there is no evidence as to the amount of reduction in compensation benefits which might be required. See Mallet v. La. Nursing Homes, Inc., 459 So.2d 178 (La.App. 3rd Cir.1984), writ denied, 463 So.2d 604, 605 (La.1985). We also agree with the trial court that the defendant has not shown a right to a reduction under the other subsection, inasmuch as it cannot be determined from the record whether this is Old Age Insurance Benefits under Title II of the Social Security Act, nor is there any evidence, if it is Old-Age Benefits, as to the extent not funded by the employee.

REDUCTION FOR DISABILITY RETIREMENT BENEFITS
We likewise find no error in the trial court's decision regarding the last issue on appeal which has to do with whether the defendant should receive a reduction in workmen's compensation benefits to reflect plaintiff's receipt of $998.89 per month from Lafayette General Hospital in disability retirement benefits.
We believe that the trial court was correct. An examination of the retirement plan for employees of Lafayette General Hospital shows that Ms. Domingue, who had been an employee of the hospital since 1947, had fully vested rights and could have taken an early retirement at the time of her injury, and that her normal retirement date was May 1, 1990 (when she reached 65). Her monthly disability retirement benefits were calculated on the same employee data that was used for the calculation of her early retirement benefits. Although the disability benefit (until May 1, 1990) would be somewhat higher than the early retirement benefit, the total remained essentially a retirement benefit based on number of years of service. La.R.S. 23:1225 nowhere provides for a reduction of benefits paid under the provisions of the workmen's compensation statute for retirement benefits.
Ms. Domingue answered the appeal requesting an increase in the awarded attorney fees for the representation in this appeal. Inasmuch as this case has been before us twice, we increase attorney fees by an additional $1,500.
For the above and foregoing reasons, the judgment of the trial court is amended, and affirmed as amended, at appellant's costs.

AMENDED AND AFFIRMED.