619 So.2d 610 (1993)
Arthur CROSS, Jr., Plaintiff-Appellee,
v.
TRAVELERS INSURANCE COMPANY and Refiners Transport Service, Inc., Defendants-Appellants.
No. 22737-CA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1993.
Rehearing Denied June 17, 1993.
*611 Mayer, Smith & Roberts by Walter O. Hunter, Jr., Shreveport, for defendants-appellants.
Campbell, Campbell & Johnson by James M. Johnson, Minden, for plaintiff-appellee.
Before NORRIS, VICTORY and BROWN, JJ.
BROWN, Judge.
Defendants, Refiners Transport Service, Inc. (Refiners Transport) and Travelers Insurance Company (Travelers), appealed the judgment of the trial court awarding plaintiff, Arthur Cross, Jr., workers' compensation benefits as the result of a heart attack. Because Cross died before judgment was signed, we remanded for the substitution of the proper party plaintiff. The formalities being completed, judgment was again rendered for the substituted plaintiff and defendants appeal.[1] We affirm.

FACTS
On November 20, 1987, the Office of Workers' Compensation rejected Cross's claim for workers' compensation benefits finding that his myocardial infarction was not work-related. On December 18, 1987, Cross instituted this action in district court for workers' compensation benefits naming as defendants his employer, Refiners Transport, and its insurer, Travelers.
*612 At trial Cross's case consisted primarily of his testimony and medical depositions. Cross was 54 years old, had an ulcer and was taking medication for high blood pressure but otherwise claimed good health. Cross testified that he had been employed by Refiners Transport as a truck driver for approximately six years. He drove an 18 wheel tractor-trailer rig and mainly hauled cardboard boxes for Inland Container out of its Minden plant. Cross's usual work procedure was to pick up a trailer already loaded at the Inland Container plant; however, on occasion he had assisted in loading. His lifetime work history was principally as a welder and truck driver.
Cross denied any indication of heart problems prior to December 12, 1986. On that date, Cross reported to work in the early morning hours. He drove his tractor to Inland Container and picked up a loaded trailer for a trip to Dallas, Texas. As he was pulling away from the terminal, Cross thought he was having indigestion and stopped to purchase Rolaids before getting on Interstate 20. Cross felt worse near Waskom, Texas, and pulled over for a few minutes. He then stopped near Marshall and purchased more Rolaids. On the other side of Longview, Cross pulled over and rested for approximately an hour but became concerned because he was running late.
At his first destination, Cross was told to call Inland Container's dispatcher, Steve Ramsey, who asked him why he was late in delivering his load. This conversation upset Cross and he reported that he had been sick. Cross laid down while his truck was being unloaded. Cross made another stop in the Dallas area and again did not participate in unloading but waited in the office. Cross believed he had one other stop, possibly Tyler, but his memory had been impaired following the heart attack. After departing Dallas, Cross's condition worsened and near Canton, Texas, he pulled over and rested for approximately three hours.
Upon returning to Minden, Cross stopped at his wife's workplace and told her he had been ill throughout the day. He called a friend, Loyce Manning, to pick him up at the terminal. Cross stated that at the terminal he told his supervisor, Thomas Sheets, he had been ill all day. Manning picked up Cross after 6:00 P.M. and they proceeded to Manning's house for a domino game. When none of the other players came, Cross fell asleep, claiming he was not feeling well. He slept until approximately 10:30 P.M. when his wife picked him up from Manning's house. Cross did not drink any alcohol during this time and ate a small snack after he got home before retiring for the night. Cross's indigestion woke him up and he took more Rolaids and Mylanta. Shortly thereafter, Cross was driven by his wife to Bossier Medical Center where he was diagnosed as having had a myocardial infarction.
Cross was hospitalized for eleven days and then rehospitalized five days later after experiencing severe dizzy spells. He never attempted to return to work following the heart attack. In May of 1987 Cross's condition was diagnosed as a hypersensitive carotid sinus which necessitated the implant of a pacemaker.
Cross's parents had heart problems and he smoked a pack of cigarettes every two days. He stated that he was not a heavy drinker of alcoholic beverages. Although released by his physician to return to light work in March 1987, Cross stated his employer had no work within the restrictions imposed. Plaintiff's testimony was corroborated by his wife, Martha Jo Cross, and friend, Loyce Manning.
Thomas Sheets, terminal manager for Refiners Transport, testified Cross was a good employee. Sheets stated that his first contact with Cross on December 12, 1986, was at the office at approximately 7:00 to 7:30 P.M. Sheets denied that Cross made any complaints about his health. Sheets testified that nothing was said by Cross concerning being late or having to repeatedly pull over on the Dallas trip nor had there been any complaints from the dispatcher with Inland Container. Sheets did not learn of Cross's heart attack until the afternoon of the next day.
When Cross was released to light duty work, Sheets told him that it would take *613 more than twenty pounds to pull himself inside the truck, hook up his trailer or close the trailer doors. Sheets stated that because of the restriction not to lift more than twenty pounds, there was no light duty work available.
Steve Ramsey, the shipping clerk and dispatcher with Inland Container, had no recollection of Cross calling in on the date of the incident. Gary Hunter, a fellow truck driver, was present in the office with Sheets when Cross reported in and testified that Cross made no comments about experiencing any physical problems during the Dallas trip.
After reviewing the evidence, the trial court found in favor of Cross and awarded him workers' compensation benefits during his lifetime in the sum of $261 per week, together with all related medical expenses in the amount of $17,752.90. The trial court found that the heart attack was attributable to stress related to Cross's employment as a truck driver. The court determined that Cross's disability was causally related to his employment and concluded that Cross sustained a total and permanent disability within the course and scope of his employment. Finding that there was a good faith dispute as to whether Cross was entitled to benefits, the trial court denied demands for statutory penalties and attorney fees.
After the trial court's decision, but before judgment was signed, Cross died. Because a judgment for or against a dead person is an absolute nullity, we remanded the case back to the trial court to permit the substitution of parties. Cross v. Travelers, No. 22,737 (La.App.2d Cir.1991) (unpublished). Thereafter, Cross's wife, individually and as administratrix of his succession, was substituted as plaintiff and a new judgment was signed adopting the provisions of the original judgment. Thus, the merits of the case are now properly before this court.

DISCUSSION

I. CAUSATION
Defendants claim that the actual heart attack occurred at approximately 1:00 A.M., at least six to seven hours after Cross had finished work and left his employer's premises. This workday was a Friday and Cross had no further employment responsibilities until Monday morning. Although expecting to participate in a domino game, all Cross did after leaving work was nap, eat and go to bed. Therefore, defendants argue that the incident did not occur in the course of employment.
Defendants further argue that Cross stated he had indigestion as soon as he arrived on the premises to pick up his load, which at this time was not traceable to any job-connected stress, tension or hard labor. Doubting Cross's credibility, defendants contend that it was not possible for him to have made as many stops as claimed on his trip to and from Dallas within the time frame of that work day and further that he made no complaints about any illness after returning from Dallas. Defendants argue that Cross's infarction was the result of many pre-existing risk factors, including high blood pressure, obesity, high cholesterol and a family history of heart problems.
Defendants claim Cross's version of the happenings of that day are not true. However, the trial court's factual findings are entitled to great weight. Our standard of review applicable to a trier of fact's findings in a workers' compensation case is the manifest error/clearly wrong test. Key v. Insurance Company of North America, 605 So.2d 675 (La.App.2d Cir. 1992). The trial court's reasonable factual conclusions, evaluations of credibility and inferences will not be disturbed on appeal even though this court may feel that contrary evaluations and inferences are equally reasonable. Patterson v. GNB Battery, Inc., 569 So.2d 640 (La.App.2d Cir.1990), writ denied, 573 So.2d 1134 (La.1991).
The trial court believed and accepted Cross's testimony of the events of the day in question. A worker's testimony alone may be sufficient to discharge the burden of proof, provided that no other *614 evidence discredits or casts serious doubt upon his version of the incident and the worker's testimony is corroborated by the circumstances following the alleged incident. Bruno v. Harbert International, 593 So.2d 357 (La.1992); Roszell v. National Union Fire Insurance Company, 602 So.2d 87 (La.App. 3d Cir.1992). Corroboration of the worker's testimony may be provided by co-workers, family or friends and medical evidence. Bruno v. Harbert International, supra. See also W. Malone & A. Johnson, Workers' Compensation Law and Practice, § 253, 13 La. Civil Law Treatise (2d ed. 1980).
Although there was some evidence to support defendants' doubts about Cross's testimony, we cannot say that the trial court's factual evaluations and inferences in this case were clearly wrong. Medical evidence and the testimony of Cross's wife and friend support Cross's account of the day at issue. Thus, we are bound by the trial court's acceptance of Cross's testimony.
Cross's recitation of the facts of that day, however, does not resolve the primary issue. In order for the employee to recover, it must be determined that the claimant's employment somehow caused or contributed to his disability, although it is not necessary that the exact cause be found. Shelton v. E.B. Wall, 614 So.2d 828 (La.App.2d Cir.1993); Lubom v. L.J. Earnest, Inc., 579 So.2d 1174 (La.App.2d Cir.1991).
The nature of cardiovascular disease presents difficult causation problems in workers' compensation claims. Myocardial infarction is commonly called a "heart attack." An infarction is caused by an insufficient amount of arterial blood to meet the needs of the heart. Increasing the work of the heart increases its metabolic needs. Thus, physical exertion and mental stress can result in a myocardial infarction; however, such exertion is not always necessary to cause an infarction. It can also be precipitated by progression of an underlying disease such as atherosclerosis and arteriosclerosis.
The law establishing standards for causally connecting a cardiovascular condition with employment was amended in 1989.[2] The rights and duties of the parties, however, are fixed according to the law at the time of injury. Thus, Louisiana's Workers' Compensation law in effect on December 12, 1986, the date of plaintiff's injury, is applicable. Hill v. L.J. Earnest, Inc., 568 So.2d 146 (La.App.2d Cir.1990), writ denied, 571 So.2d 652 (La.1990).
Before the 1989 amendment to LSA-RS 23:1021, a workers' compensation plaintiff had to prove by a preponderance of the evidence that a heart attack occurring on the job was due to an "increased risk" from physical exertion greater than that of "non-employment life." Guidry v. Sline Industrial Painters, 418 So.2d 626 (La. 1982). The guiding principles for tracing a heart attack to employment in cases involving only emotional stress were set forth in Ferguson v. HDE, Inc., 270 So.2d 867 (La. 1972); Reid v. Gamb, Inc., 509 So.2d 995 (La.1987); and Carruthers v. PPG Industries, Inc., 551 So.2d 1282 (La.1989). Initially, in Ferguson, the employee had to show the job caused "extraordinary" mental stress, but this approach was modified in Reid which adopted the Guidry reasoning that the employee need only to show mental stress greater than that in non-employment activities.
In the present case, Dr. Thomas Allen Brown, board certified in internal medicine with a speciality in cardiology, testified as follows:
Q. All right. Do you feel as a trained cardiologist, assuming that he did have *615 this stress that he talked about that he felt very conscientious about his job, that he was late because he was sick, do you feel that that stress contributed to or aggravated the condition that resulted in the myocardial infarction occurring at that time?
A. I think it could well play a part. I think there's a lot about stress that we don't realize, we do know that when people are under stress that they have a higher level of adrenalin. Adrenalin can cause an increased amount of oxygen to be needed at the heart, it can also increase what we call platelet adhesiveness which can cause platelets to stick together and the combination of those factors may well trigger angina, a heart attack [sic], any of those.
. . . . .
Q. ... is that the basic role that you believe that stress plays?
A. That's the basic. It can create a mismatch, in other words, you can only get so much blood flow through one of those stenotic buildups. So anytime your heart needs more blood flow than it's getting, then you have the potential for a heart attack. But as we're seeing more and more, also with the adrenalin or epinephrin, is that it can cause platelets to stick together too, epinephrin released and that can be related to stress. Initially stress, initially we thought that stress did everything and then it came back stress didn't do anything and now I think you have to weigh it and I think stress plays a major role in a lot of cardiovascular events.
Q. Assuming these facts that I gave you under this hypothet, ... but assuming those [Cross's testimony] to be truthful, do you feel that type of stress could play a major role in the occurrence of the myocardial infarction that Arthur Cross had?
A. Yes, sir.
The other two physicians testifying in this case agreed with Dr. Brown. Dr. Thomas M. Smith, a board certified cardiologist, performed a heart catheterization on Cross at the Bossier Medical Center ten days after the December 13th infarction. Dr. Smith determined that Cross had two arteries that were blocked 100% and 60%. Dr. Smith agreed that this artherosclerotic condition was a factor in the infarction Cross suffered; however, he further stated that, assuming Cross's testimony to be true, Cross was experiencing pre-infarction angina (a temporary increase in myocardial demands due to physical exertion or mental stress) as early as the severe indigestion episode that caused him to pull over at Marshall. Dr. Smith concluded that the stress during Cross's trip to Dallas contributed to his heart attack. On cross examination Dr. Smith stated that he related the infarction to the workday because of the symptoms (angina) Cross experienced during that day.
Thus, applying the medical testimony to the facts as recited by Cross, we cannot say that the trial court was clearly wrong in concluding that there was a causal connection between the job and the myocardial infarction. The stress encountered on the job on this particular day was greater than that experienced in non-employment activities. Reid, supra.
Defendants argue in the alternative that Cross's disability resulted from a hypersensitive carotid sinus condition which was not casually related to the job. Defendants claim Cross was released to return to work on March 30, 1987, but thereafter, was treated at the LSU Medical Center for dizziness. LSU diagnosed a hypersensitive carotid sinus condition. This condition results in a sinus pause in the neck causing a stoppage of the heart. In May of 1987 a pacemaker was implanted in Cross at LSU.
Defendants' claim that Cross was released to return to work in March 1987 is not supported by the record. Dr. Turakhia only released Cross to work four hours a day for two weeks with no lifting of any weight. Specifically Dr. Turakhia testified:
"... we told him [Cross] we can release him to work four hours a day for two weeks. Advised against lifting any weight...."
*616 The testimony of Sheets demonstrated that there was no such work available. LSA-R.S. 23:1221 requires a claimant to prove his disability by clear and convincing evidence. Whether Cross fulfilled his burden of proof is a factual decision by the trial court entitled to great weight. We cannot say the trial court's determination in this case was clearly wrong.

II. OFFSET OF SOCIAL SECURITY BENEFITS
Defendants next argue that, if workers' compensation benefits are due, they should receive a credit for social security disability benefits that were paid to or on behalf of Cross.
LSA-R.S. 23:1225 provides for a reduction in workers' compensation benefits when the employee also receives federal social security benefits. Cousins v. City of New Orleans, 608 So.2d 978 (La.1992). However, this opportunity for a reduction is afforded an employer only under certain conditions. For the employer to benefit from the statute it must make a demand for an offset; the employer can reduce his payments only prospectively from the date of judicial demand. (emphasis added). Holmes v. International Paper Co., 559 So.2d 970 (La.App.2d Cir.1990); Jackson v. Georgia Casualty and Surety Co., 513 So.2d 530 (La.App.2d Cir.1987), writ denied, 515 So.2d 448 (La.1987); Warren v. H & W Steel Erectors, Inc., 569 So.2d 178 (La.App. 1st Cir.1990); Chapman v. Pelican Truck Lines, Inc., 541 So.2d 1015 (La.App. 3d Cir.1989); Jackson v. Maloney Trucking & Storage, Inc., 442 So.2d 849 (La.App. 4th Cir.1983).
In Jackson v. Georgia Casualty and Surety Co., supra, Georgia Casualty filed an amended answer in the trial court requesting a credit in accordance with LSA-R.S. 23:1225. The court found that the filing of this amended answer was the point at which defendant exercised its right to an offset. In the instant case, defendants' amended answer was not filed until June 22, 1989. Therefore, any benefits received by Cross before that date are not subject to reduction. As to the social security disability benefits received after the date of judicial demand, defendants must prove their entitlement to a credit under LSA-R.S. 23:1225 by a preponderance of the evidence. Holmes v. International Paper Co., supra.
In Mallet v. Louisiana Nursing Homes, Inc., 459 So.2d 178 (La.App. 3d Cir.1984), writs denied, 463 So.2d 604, 605 (La.1985), the appellate court affirmed the trial court's refusal to allow an offset for social security disability benefits received by the claimant. In Mallet, defendants did not establish their entitlement to a reduction. Defendants simply claimed an offset for the total amount of federal disability benefits received by plaintiff. The Third Circuit found that LSA-R.S. 23:1225 does not operate so simplistically. The court observed that defendants did not establish that the combined payments of workers' compensation benefits and federal disability benefits would subject the plaintiff to "a reduction of the benefits payable under the Federal Old Age, Survivors and Disability Insurance Act pursuant to 42 U.S.C. Section 424a ..." To utilize LSA-R.S. 23:1225 a defendant must first show that a reduction is required, and second, must set forth the amount of offset or reduction entailed by the statute. The statute provides that a reduction in compensation payments shall be made only to the extent that the combined payments exceed those that would have been payable under the federal law guidelines.
As in Mallet, defendants have not made this prerequisite showing. Therefore, their claim for offset or reduction is without merit. See also Domingue v. Hartford Insurance Co., 568 So.2d 221 (La.App. 3d Cir.1990), writ denied, 571 So.2d 654 (La.1990); Achord v. H.E. Weise Construction Co., 422 So.2d 1248 (La.App. 1st Cir.1982).

CONCLUSION
On August 25, 1990, Cross died from an acute myocardial infarction. The original judgment provided for weekly workers' compensation benefits "for the remainder *617 of his life." Thus, as written the judgment is affirmed.
AFFIRMED.
VICTORY, J., dissents with written reasons.
VICTORY, Judge, dissenting.
At trial, the plaintiff admitted that he had indigestion very early in the morning before he was late anywhere and that the only activities that he had performed on the job that morning prior to getting indigestion was to get his truck, back it under the trailer, roll up the landing gear, and close the doors to the trailer. Even if this indigestion is related to his later heart attack (plaintiff had a long history of indigestion), which occurred six hours after his work was completed, it preceded anything significant that the plaintiff did on the job and preceded any stress that the plaintiff might have suffered about being late. Plaintiff did not get indigestion because of any stress from being late, but was late because he was sick with indigestion.
Although each of the doctors who testified expressed the opinion that the stress of being late "could" have played a role in plaintiff's later heart attack, they were given a hypothetical fact situation that erroneously stated plaintiff first began to have indigestion at about Marshall, Texas after he had been driving his truck an hour. However, plaintiff admitted at trial that he had had indigestion that morning before he ever left the Minden area, and before he was late.
Further, after it was explained to Dr. Brown that nobody at the employer's shop had complained about the plaintiff being late and that he finished his work approximately six hours before the heart attack, he responded to the following question:
Q. Would that be the type of stress problems that occurred during the day while driving that would cause an infarction at 12:30 or later?
A. Probably not. Probably if it would be more something spacially related. You could get an amount, a pretty good time period to say that it is related four or five hours later, even three hours later.
Later, Dr. Brown explained:
A. "[A]nd any stress can act the same way, whether it is stress from the job, stress from not having your bills paid, or whatever, but you have to lend some credence to whatever is the most temporally related. If its over two or three hours, I have a hard time saying that that's temporally related, if it is, then I have a hard time saying it is not related. (Emphasis added.)
The evidence in this case clearly indicates that the heart attack did not occur until at least six hours after the plaintiff had left the job. By his own treating physician's statement, "if it's over two or three hours, I have a hard time saying that's temporally related ..."
Further, because the heart attack occurred at least six hours after the plaintiff stopped working, the plaintiff has failed to prove the "in course of" requirement of an accident. LSA-R.S. 23:1031. The fact that he may have indigestion on the job as a precursor to a heart attack on the day before his heart attack, does not satisfy the "in course of" requirement since the attack itself did not occur until many hours after work. The indigestion, or even angina, are symptoms of a condition, not indications of muscle destruction associated with a heart attack. See King v. Wilson Brothers Drilling Company, 441 So.2d 68 (La.App. 3d Cir.1983).
In sum, accepting the plaintiff's factual testimony at trial as true, he failed to prove that he had an accident arising out of and in the course of his employment. Plaintiff's testimony shows that his indigestion began before he was ever late for any delivery, and thus, had to have been caused by something other than his worrying about being late. In my view, the trial judge was clearly wrong in awarding compensation benefits under the facts and circumstances of this case, and his judgment should be reversed.

*618 APPLICATION FOR REHEARING
Before NORRIS, HIGHTOWER, VICTORY, BROWN and STEWART, JJ.
Rehearing denied June 17, 1993.
HIGHTOWER and VICTORY, JJ., would grant rehearing.
NORRIS, Judge, concurring in denial of rehearing [June 18, 1993].
I concur in the denial of the rehearing. By way of clarification, however, I view the evidence as clear and convincing that Cross was still temporarily totally disabled at the time of his death.
NOTES
[1] Cross's wife, Martha Jo Johnson Cross, individually and as administratrix of the succession of Arthur Cross, Jr., was substituted as plaintiff. Judgment allowed the substitution and adopted all of the provisions of the previous judgment.
[2] The 1989 amendments to R.S. 23:1021(7) established a new standard for cardiovascular claims. The most striking change was a legislative requirement that the claim must be proven by "clear and convincing evidence." Under the amendments only physical stress will be recognized as giving rise to a workers' compensation claim for cardiovascular events (not emotional stress) and the physical stress must be shown to be "extraordinary and unusual in comparison to the stress or exertion experienced by the average employee in that occupation." This physical stress must be the "predominant and major cause of the heart-related or perivascular injury, illness or death."